## GABRIEL RABB v. MARGARET GRIFFIN et al.

The act of the legislature of 1846 (Hutch. Code, 498, § 6), called the " married woman's law," provides that if the wife " die possessed of slaves, or other personal chattels, and leaving issue, such property shall descend to her issue; " but if she die without issue surviving her, the same slaves and other personal property shall vest in the surviving husband. *Held*, that all the rights, whether in action or possession, which the wife was entitled to at her death under this act, were intended to be vested, first, in her children, and, secondly, in her husband on the failure of issue.

Under the same section of the act of 1846, the husband is entitled to an interest, as tenant by the courtesy, in so much of the real estate of the wife's father as descended to her on his death.

The wife was seized in law of her estate in the lands immediately on the death of her father, and upon her death the same became vested in her surviving husband, as tenant for life; and it was not necessary to the vesting of her estate, or of that of her husband, that there should have been an actual entry. *Day* v. *Cochran*, 24 Miss. 261.

In this case, R. cannot compel a division of the lands in equity; but the other heirs are accountable to him for the yearly value of his interest, and the lands are chargeable for the payment of the same.

The probate court could have no jurisdiction of this case, because there was no administration on the estate.

IN error from the southern district chancery court; Hon. James M. Smiley, vice-chancellor.

Rabb *v.* Griffin et al.

The facts of the case are sufficiently set forth in the opinion of the court.

*R. North,* for appellant.

One twelfth part of the slaves and one eleventh part of the land (subject to dower) descended to Eliza on the death of her father; and complainant, then a tenant by courtesy, became entitled to an estate for his own life in the eleventh part of the land; and on the death of his wife Eliza, her thirteenth part of the slaves vested in complainant by the " married woman's " law of 1846, the child of said Eliza being then dead.

In *Carmichael* v. *Browder,* 3 How. 255, it was held " that whatever is a matter testamentary, or of administration, falls under the cognizance of the court of probate." " We do not mean to decide, however," proceeds the court, " that there are not causes arising in the course of administration which may be proper for the interposition of a court of equity. The same rule which is applicable to other courts of law will, no doubt, apply to this. If it (the probate court) be wholly incompetent to give relief, and the party has not by his own laches lost his remedy, then it might be a proper case for equity jurisdiction."

The case of *McRea,* 4 How. 458, was a suit in chancery for one of two slaves by a distributee of an estate where there was no administrator. The court says that " the bill alleges that no administration has been had on the estate of Christiana McRea, or that of complainant's mother. This statement is decisive of the question. Upon which one of the parties can the probate court act ? "

In *Faroe* v. *Graves,* 4 S. & M. 711, this court held, " that it held, in administration cases where the court of chancery had jurisdiction previous to our amended constitution, it still retained it; and that distributees are not bound to take out letters."

*Potter,* on the same side, cited *Varick* v. *Smith,* 5 Paige, 137.

No counsel for appellees.

Rabb *v.* Griffin et al.

Mr. Justice HANDY delivered the opinion of the court.

The plaintiff in error filed his bill in the southern district chancery court for a partition of the personal and real estate of Isham Griffin, deceased, alleging that the intestate died in July, 1849, seized and possessed of real and personal estate in Adams county, leaving a daughter, Eliza, surviving him, who had intermarried with the complainant in 1834, and eleven other children and a widow. Complainant and his wife Eliza had two children, who are both dead, and she afterwards died, in the year 1850. No administration has been taken of the estate of Griffin; but upon his death, his widow and other children than Eliza took possession of the property, and have received the issues and profits of it, and refused to permit complainant and his wife Eliza to have any benefit of it, and now deny that complainant has any interest therein.

The complainant claims one thirteenth part of the personal estate, and the possession of one twelfth part of the land, and the rents and profits since the intestate's death, as tenant by the courtesy. The defendants demurred to the bill, and the demurrer was sustained, and the bill dismissed.

The first question presented is, whether the husband is entitled to his wife's distributive share of the estate of her father; and this is governed by the "married woman's" law of 1846, as the intestate died after the passage of that act.

The 6th section of that act (Hutch. Code, 498) provides, that if the wife "die possessed of slaves or other personal chattels, and leaving issue, such property shall descend to her issue;" but if she die without issue surviving her, the same slaves and other personal property shall vest in the surviving husband. In this case the property was never distributed, and the share of complainant's wife was never set apart to her, nor was it reduced to possession by the husband. Did it vest, then, in the husband, on the death of his wife without issue surviving her?

It is to be observed, that the statute confers the same right, in relation to the property, upon the husband, in case the wife dies without issue surviving her, as it gives to the child or

49*

children, in case there be any surviving her. This shows that all the rights, whether in action or possession, which the wife was entitled to at her death, were intended to be vested first in her children, and secondly in her husband; for it is not to be supposed that it was intended to debar the children of the rights of property of the wife, because the property had not been reduced to actual possession by the wife in her lifetime. And yet, if the husband is not entitled to them in the contingency mentioned in the statute, the children, for the same reason, would not be entitled. When the statute speaks of "slaves, and other personal chattels, of which the wife die possessed as her separate property," it must be understood to comprehend all such rights and interests in personal estate which she then possessed as might have been asserted and enforced under the rules of the common law by her administrator, and all such choses in action as by the same rules would have vested in the surviving husband *jure mariti.* Any other construction than this would not only work the grossest injustice to those who have the first and most peculiar claim to the estate of the wife, but would find no sanction in the general objects of the statute.

We are, therefore, of opinion, that the complainant was entitled to the relief sought in reference to the personal estate of the deceased wife's father.

Under the provisions of the same section of the act of 1846, he was also entitled to an interest, as tenant by the courtesy, in so much of the real estate of the wife's father as descended to her on his death. By the rules of the common law, which are not changed in this respect by the statute, she was seized in law of her estate in the lands immediately on the death of her father; and upon her death, the same became vested in her surviving husband, as tenant for life. It was not necessary to the vesting of her estate, or of that of her husband, that there should have been an actual entry. *Day* v. *Cochran*, 24 Miss. 261. This interest, however, does not entitle the complainant to partition of the lands, nor would a court of equity grant such relief in a case where the estate is in the condition in which

the lands here are placed; but the heirs are accountable to the complainant for the yearly value of his interest, and the lands are chargeable for the payment of the same.

The vice-chancellor appears to have considered that the facts of this case did not give jurisdiction to a court of equity. But we cannot perceive the correctness of this view. It is plain, taking the statements of the bill as true, as they are admitted to be by the demurrer, that the probate court had not jurisdiction; because there was no administration of the estate granted. And for the same reason, a court of equity had jurisdiction, if the claim be, in other respects, such as should in justice be entertained. 4 S. & M. 711; 4 How. 458; 3 Ib. 255.

The decree of the vice-chancellor is reversed, and the cause remanded, to be proceeded with according to the principles herein stated.