WESLEY M. WOOD et ux. *vs.* THOMAS J. FORD.

As a general rule, that distribution of the estate of a deceased person must be made by the probate court, and through the medium of an administrator or executor; yet there are cases in which a court of chancery will exercise jurisdiction, and one of the cases is, where no administration has been granted in this State. *Held*, that in such a case, a court of chancery has jurisdiction to decree a division of the property and an account for hire, and the distributee is not compelled to take out letters of administration.

In such a case, the jurisdiction of a court of equity exists where there are connected with the property sought to be distributed other matters of controversy, in which the probate court would not be competent to give relief, and which should be adjusted in one suit. *Held*, that it is well settled, that the chancery court has jurisdiction to grant relief as to all the matters connected with the controversy.

The defence of the statute of limitations, unless taken as a special ground of demurrer in the chancery court, cannot be set up. *Archer* v. *Jones*, 26 Miss. 557, cited and confirmed.

The statute prescribing the period of limitations of such actions as could be used for the recovery of slaves, does not in terms apply to a suit in equity; but courts of equity adopt the principle of such statutes, and allow them as rules of decision in analogy to the rules at law. *Held*, that if under the peculiar facts of any case the statute would not run at law, it could not apply in equity.

In the present case, the statute could not run at law in favor of the possession of W. and wife, because, after the slaves came to their possession, there was no administrator in existence, and no one having the capacity to sue at law to recover the slaves. The statute could not commence to run until the legal title was vested in some one.

There being no one capable of suing in law for the recovery of the slaves, W. and wife could not claim to be in adverse possession, but are rather to be considered as holding the property in trust for the party legally entitled to it, and subject to distribution according to law.

If administration had been granted to F., he would not have been barred of his right to sue and receive the slaves from W. and wife.

ON appeal from the southern district chancery court at Natchez; Hon. B. C. Buckley, vice-chancellor.

Thomas J. Ford filed in the vice-chancery court at Natchez his bill of complaint, and states, that Robert Ford (father of complainant, Thomas J. Ford) died in 1822, owning in Wilkin-

son county an estate consisting of a plantation, slaves, stock, &c.; that William Hazlip was appointed administrator, who finally settled his administration in 1836, showing a moneyed balance of something over $900 due the estate, and stating in his settlement account, that he left all the slaves, stock, &c., mentioned in his inventory, on the plantation, except two slaves who had died.

That in 1836 Wood intermarried with the widow of Robert Ford, and immediately entered upon the possession of the plantation, slaves, &c., raised crops, &c., received the proceeds, rents, &c. until 1846, when he (Wood) delivered to complainant nine slaves (complainant then a minor), upon the representation that nine slaves was the share of complainant in his father's estate, the number of slaves left by his father being then twenty-four, exclusive of a woman named Charlotte, which had been sold by Wood and the price received by him; that in 1846 complainant sold to Wood his interest in the land.

That Robert Ford left surviving him at his death his widow, Nancy Ford, and five children; that four of said children died shortly after their father, intestate, &c.; that the said Nancy and complainant are the only distributees of said estate; that complainant succeeded by inheritance to the interests of his deceased brothers.

That he is entitled to five sixths of the slaves, and their hire, profits, and also the rents of the land from the date of Wood and wife's marriage and possession in 1836 to 1846, when complainant sold his lands to Wood and received nine of the negroes, &c.; and also, to a division of said slaves in the above proportions.

The bill prays for relief, specific and general, as may be consistent with the facts, and the defendants demurred to it, which demurrer the court overruled, and they prayed this appeal.

*Carnot Posey*, for appellants.

To entertain a bill like this in the chancery court, would be assuming the jurisdiction of the probate court, guaranteed to it by the constitution, art. 4, § 18, H. & H. 26.   But

it will be contended, that it was unnecessary for the complainant to qualify himself as administrator of his deceased brothers, in order to enable him to commence proceeding in a court of chancery to recover property purporting or supposed to belong to them in their lifetime; and to sustain themselves in this position, the opposite counsel will rely upon the decisions in the cases *McRea* v. *Walker et al.* 4 How. R. 455, and *Farris's Heirs* v. *Graves et ux.* 4 S. & M. 711. In the case of *McRea* v. *Walker*, three distinct grounds are taken by the court to sustain the jurisdiction of the chancery court in that case, neither of which are similar to the case under consideration. 1. It was alleged, that the slave sued for was a family slave, and of peculiar value, and that no compensation in damages merely would be an adequate relief. There is no such allegation in this bill; in fact, the complainant seeks for a pecuniary compensation in the alternative, in lieu of the particular slaves claimed as his brother's property. 2. That there was a disputed question of title, which could not be adjusted in the probate court; and 3. That where the court of chancery had original jurisdiction, previous to our amended constitution, that court might still take cognizance where no letters testamentary or administration had been obtained in our probate court.

The case of *Farris's Heirs* v. *Graves et ux.* is equally distinguishable from the one under consideration, on account of the complication of unsettled accounts, which had existed and accumulated for more than twenty years before the commencement of that suit, and other reasons set forth by this court in the discussion of the case of *Browning* v. *Watkins*, 10 S. & M. 485.

But even if this case assimilates to those above referred to, and which will no doubt be relied upon by defendant's counsel in the argument of this case, I contend that the more recent decision of the cases of *Browning et al.* v. *Watkins et al.* and *Marshall et al.* v. *King et al.* 2 Cush. 91, settles this case without a possibility of dispute. The learned justice, after citing abundant authorities from other States, which are here referred to, says, " that upon a review of all the cases, we think the rule very clearly appears to be, that to enable the distributees to

obtain or recover their distributive share, it is necessary that administration should be taken out on the estate, through the medium of which the property may be recovered and distributed according to law." The bill sets forth that Hazlip, the administrator of Ford, filed in the probate court of Wilkinson county a final settlement account of his administration; but it nowhere appears in the record that said court decreed on said account, or ordered a distribution of said estate; if this is the fact, the estate of Robert Ford still remains open and unsettled, and upon the qualification of an administrator *de bonis non*, the probate court would have the power to direct the administrator *de bonis non* to inventory and appraise all the property of the deceased which has not been administered, and this property now claimed in the bill would certainly be liable to be taken by an administrator *de bonis non* as the property or assets of Robert Ford, deceased, if it is the property of his estatè and unadministered. But even if this property had been administered by Hazlip, and regularly and legally distributed by an order of the probate court, (which is not the case,) and had come into the possession of a third party as the property of complainant's deceased brothers, I think, according to the authorities above cited, that it would be necessary that he should be qualified as their administrator before he could proceed in a court of chancery to recover their property.

And, moreover, I assume, that by the showing on the face of the bill, the defendants had more than three years quiet, peaceable, and adverse possession of the slaves in controversy before the commencement of this suit, and that the claim is barred by the statute of limitations. The court below would have been authorized, on this ground alone, to sustain the demurrer and dismiss the bill.

The authorities, I think, sustain me in contending that the demurrer should be sustained and the bill dismissed.

*J. B. S. Thatcher*, on the same side.

*H. F. Simrall*, for appellee.

The attitude of this property is this. Wood and wife en-

tered into possession and enjoyment of property in 1836. The title and ownership of five sixths of which was in Thomas J. Ford, then a minor, and son of Mrs. Wood by her first marriage. This minor and son was maintained and educated until 1846. She is most clearly entitled to an account of the profits and income, that we have seen he could not have in the probate court. It is true that this property had belonged to Robert Ford in his lifetime, and had been so treated by Hazlip, his administrator, who had carried it through the forms of administration, and left it in possession of the widow and her husband.

One who enters into possession of property of an infant, becomes thereby trustee for the infant, and is responsible to an account in chancery for the profits and income. This is ruled in the case of *Carmichael and Phebe Hunter's case*, in 4 How., certainly a very familiar case to the court. The principle is carried to the extent of holding the party to this liability, though he may be a tortfeasor, and his possession tortious.

The case of *McRea* v. *Walker*, 4 How. 455, if still authority in this court, is a weaker case for equity jurisdiction, than our case. I quote the statement: "The bill was filed to recover possession of a negro girl, Mary, which complainant alleges belongs to him as one of the heirs and distributees of his sister Christina M'Crea, and his mother Mary M'Crea. It appears from the proofs, that the slaves Mary and Henry were the property of Mrs. M'Crea, and that at her death, they belonged to complainant and D. B. M'Crea as heirs. The slave Mary was sold by D. B. M'Crea to Runnels, who had knowledge of complainant's title. Suit was against Walker, administrator of Runnels, and the widow and heirs of D. B. M'Crea, there being no administration on his estate, for the recovery of Mary, her hire, &c., as his complainant's share, &c. (D. B. M'Crea had also sold Henry, which was equal to his share, &c.") The questions made at the argument were, that chancery had no jurisdiction, that the complainant sought to recover the slave, hire, &c., by title derived from Mrs. M'Crea by inheritance; which could only be asserted by an administrator, &c. In the opinion at page 458, the court says: "The bill alleges that

no administration has been had on the estate of Christina M'Crea, or complainant's mother. This statement is deemed decisive of the question, upon which one of the parties can the probate court act; and the probate court has no power to order a distribution in this case, because it has no jurisdiction over the persons of the defendants."

The case of *Farris's Heirs* v. *Graves et ux.* 4 S. & M. 711, is probably more nearly akin in many features to this one, than the case of *M' Crea* v. *Walker.* Farris had died many years before the bill was filed; his whole estate, quite a large one, passed into the hands of his mother and one Graves, with whom she had intermarried. A pretended administration (with some action thereon) was opened in Hancock county, which was illegal and void; part of the property had been sold by Graves.

The heirs of Farris brought their bill for an account and for the property. Upon demurrer for want of jurisdiction, the bill was sustained. The title which they set up was inheritance, descent from their father, (there could have been no creditors). The court, referring with approbation to the case of *M' Crea* v. *Walker*, 4 How., declares: "It seems now settled that in administration cases, in which the court of chancery had original jurisdiction, previous to our amended constitution, that court may still take cognizance, where no letters testamentary or of administration have been obtained in our probate courts."

Farris's heirs were not turned out of court, and directed to seek their property and its profits through an administrator. Lapse of time rendered it quite certain that there were no creditors, and there remained no parties interested in the property left by their father, except themselves and Graves and wife. So in our case, the creditors were all satisfied by Hazlip, administrator; he had four years within which to do so. And there now remains no other parties, having any sort of interest in the property except Thomas J. Ford, and Wood and wife. A long account, both of the profits of land and slaves, must be taken and stated. Farris proffers in his bill to allow in the accounting to Wood and wife, all just and proper expenditures, on account of his education and support; and as ancil-

Wood et ux. *v.* Ford.

lary aid to support the jurisdiction, the bill avers that he received from Wood nine slaves, upon Wood's assurance that he was only entitled to one half the slaves, and Mrs. Wood the other half. Surely the chancellor ought to rectify this mistake, or relieve from this fraud.

I conclude, therefore, that this reasoning and the authorities cited, establish the jurisdiction, and also that there is no necessity for administration on the estates of the infant brothers of complainant, who died in tender infancy, and shortly after the death of their father.

The case of *Marshall* v. *King*, 2 Cush. 86, is much relied upon, as showing a want of jurisdiction in chancery to entertain this case. That was a case where the heirs of Missouri King applied to the probate court for their distributive interest in her estate, when there was no administrator in that court. In that court it was held that such relief could not be granted. Mr. McMurrain, who argued for the appellant, admitted that chancery might relieve in such case, and that such was the decision in *M' Crea* v. *Walker*, 4 How. The decision is not inconsistent with the former cases, and there is no intimation in the opinion of the court of dissatisfaction with the former cases on this point.

Mr. Justice HANDY delivered the opinion of the court.

This was a bill filed by the appellee in the district chancery court at Natchez, alleging that the complainants' father, Robert Ford, died in the year 1832, leaving the complainant and four other children and his widow, who in the year 1836 intermarried with Wiley M. Wood: That administration of the estate was granted to one Hazlip, who in 1836 made a final settlement with the probate court, showing a balance due by him to the estate of $937.00, and that all the slaves, except two which had died, and the rest of the personal property with one or two exceptions, remained on the plantation of the intestate; that said administrator inventoried sixteen slaves as belonging to the estate, which have since greatly increased in number, and that on the marriage of the appellants, they took possession of the plantation, slaves, and other property of the estate, and so

Wood et ux. *v.* Ford.

continued until the year 1846, cultivating and having the use of the same, and receiving the entire income and profits, without accounting to the complainant for any part thereof; that some time after the death of the intestate his other children, except complainant, died, unmarried and without children, and leaving the complainant, their brother and heir at law surviving, by which he became entitled to five sixths of the personal estate which came to the appellants' possession, and a fair proportion of the proceeds of the labor of the slaves, and of the rents, issues, and profits of the plantation, from the time appellants took possession, up to the year 1846, at which time complainant sold his right and title to said real estate to the appellant, Wiley M. Wood; that in the year 1846, complainant received from Wiley. M. Wood nine of said slaves, and that the residue of them, except one sold by appellants, yet remain in the possession of the appellants, having greatly increased in value, and numbering, with those received by complainant, about twenty-four; that complainant was a minor when he received the nine slaves as above stated from Wood, and that he was induced by the representations of Wood to believe that he had received his full share of the personal estate; that he had no guardian of his person or estate.

He tenders an allowance and account to Wood for any moneys expended by him on account of complainant's maintenance and education, or on any other just account; and insists that Wood is to be regarded as a trustee for him of the property of the estate, and as such is accountable for it, and its increase and profits, and prays an account and a just and equitable division of all the slaves, including those received by the complainant.

The appellants demurred to the bill, and on the demurrer being overruled, took this appeal.

The first position taken in behalf of the appellants, and in support of the demurrer is, that a court of chancery had no jurisdiction to decree a distribution of the slaves and other personalty of the estate; that such power appertained exclusively to the probate court, and that distribution cannot be made without the appointment of an administrator.

As a general rule, it is undoubtedly true, that distribution must be made by the probate court, and through the medium of an administrator or executor. Yet there are cases in which a court of chancery will exercise the jurisdiction. One of these cases is where no administration has been granted in this State. In such case, it is settled by this court, that a court of chancery has jurisdiction to decree a division of the property and an account for hire, and that the distributee is not compelled to take out letters of administration. *Farris's Heirs* v. *Graves,* 4 S. & M. 707; *McRea* v. *Walker,* 4 How. 455; *Rabb* v. *Griffin,* 26 Miss. 579; *Archer* v. *Jones,* Ib. 583. The jurisdiction of a court of equity also exists, where there are connected with the property sought to be distributed, other matters of controversy, in which the probate court would not be competent to give relief, and which should be adjusted in one suit. *Archer* v. *Jones, supra.*

It appears in this case, that the estate of the intestate had been finally settled and all its debts discharged, and that there was no longer an administrator. Nothing remained to be done but to distribute the property and assets among the parties entitled. To compel a distributee to take out letters of administration, execute bond, incur all the expense and trouble, and submit to all the delay incident to a regular administration and settlement of the estate, would under such circumstances be a most useless and unreasonable requirement. And after it should all be done, a material part of his rights in the estate would be unsettled, and require litigation in another form; he would have to sue the appellants to recover possession of the slaves, and for their use and hire, and for the rents and profits of the land.

Now all these objects may be accomplished in one and the same proceeding in a court of equity; and as the appellee would have been compelled to resort to that tribunal for relief upon a part of the matters of controversy here involved, upon well-settled doctrine that court had jurisdiction to give relief as to all matters connected with the controversy.

The second objection taken to the bill is, that the relief sought is barred by the statute of limitations, the appellants

6 *

having been in adverse possession of the slaves for more than three years. This objection was not taken as a ground of demurrer in the court below, and, for aught that appears in the record, was not made in that court.   Under the rule stated in *Archer* v. *Jones*, 26 Miss. 587, we do not think that this ground of defence should be entertained here.   But if the defence were properly presented, we do not think that it should prevail under the circumstances of this case.

The statute prescribing the period of limitation of such actions as could be used for the recovery of slaves, does not in terms apply to a suit in equity.   But courts of equity adopt the principle of such statutes, and allow them as rules of decision, in analogy to the rules at law.   If under the peculiar facts of any case, the statute would not run at law, it could not be applied in equity, which merely adopts the same rule that would apply at law.

In the present case, the statute could not run at law in favor of the possession of the appellants, because after the slaves came to their possession, there was no administrator in existtence, and no one having the capacity to sue at law to recover the slaves.   The statute could not commence to operate until the legal title was vested in some one.   There being, therefore, no one capable of suing the appellants at law to recover the slaves, the statute did not bar the legal remedy, and consequently cannot be applied to bar the remedy to recover them in equity.

It is no answer to this to say, that the complainant might have filed his bill within three years after the appellants took possession of the slaves; for, though he may have done so, it does not follow that the statute applies to his bill when he does file it after the lapse of three years.

Nor do we think that the appellants could claim to be in the adverse possession of the slaves in a just legal sense.   There being no person capable of suing at law for the recovery of them, the appellants are rather to be considered as holding them in trust for the party legally entitled and subject to distribution according to law.   If administration had been granted to the appellee, it could not be pretended that as such he would have

been barred of his right to sue and recover the slaves from the appellants._ And we think that this suit must be considered as but another mode of consummating the administration and settlement of the estate, and that the rights of the parties, in reference to the question of limitation, cannot be treated in a court of equity as materially different from what they would have been if administration had been granted to the complainant at the time of filing this bill, and the suit had been brought by him in that capacity.

Upon the whole, we think that the demurrer was properly disallowed.

The decree is affirmed, and the case remanded to the district chancery court, and the appellants required to answer the bill within sixty days.