Thomas J. Manly et al. *v.* Thomas Kidd, Admr.

1. Chancery: res adjudicata: when decree a bar to subsequent suit.— A decree rendered in a former suit will be a bar to a subsequent one, when it is between the same parties, upon the same subject-matter, and in the same right.

2. Same: res adjudicata: if parties are substantially identical, it is sufficient.—It is not necessary, in order to constitute a former decree a bar to a new suit, that the parties should be precisely the same; it is sufficient if they are substantially identical; and hence, a former decree against the *cestuis que trust* will be a bar to a new bill by the trustee, who seeks to recover the same property, upon the same title, and for their exclusive benefit.

3. Executor and administrator: a mere naked trustee when there are no debts.—An administrator who was appointed after the lapse of twenty-seven years from the death of his intestate, will be regarded in a suit to recover property, alleged to have belonged to his intestate at the time of his death, as a mere naked trustee for the distributees; after that lapse of time it will not be presumed that there are any debts due by the intestate.

4. Chancery: res adjudicata.—Where a former decree has been rendered against the complainants, upon their bill claiming that the property in controversy was limited to them in remainder, to take effect after the death of their ancestor, they cannot afterwards, as distributees, or through an administrator of the ancestor, maintain a bill to recover the same property, by showing that the deed under which they claimed in the former suit, vested an absolute fee in the first taker; the latter bill will be regarded as in the same right as the former.

5. Statute of limitations: administrator barred when distributees are, in case there are no debts.—The distributees have the right to sue for and recover property belonging to their ancestor, when there is no administrator

and no debts are shown to be due; and in such a case, where a suit by them would be barred by the Statute of Limitations, a recovery by the administrator will also be barred, although there was no administrator when the cause of action accrued, and none was appointed until within the period prescribed by the Statute of Limitations.

APPEAL from the Superior Court of Chancery. Hon. Charles Scott, chancellor.

*George L. Potter,* for appellants.

The demurrer should have been sustained,

1. Because this suit is virtually for the benefit of the same parties who were complainants in and lost the former suit. It is a mere artifice to evade the decree in that case, and perpetuate litigation. Whilst our courts permit distributees to sue in the absence of an administrator (7 Cushm. 65), it would be monstrous to permit them, when cast in the suit, to renew the controversy by obtaining the appointment of an administrator, and suing in his name. So far as this record shows, the complainant is suing as mere trustee for the distributees, and the twenty-eight years elapsed since the death of Robert Willis, and all the facts of the case, prove it is so. Suing for their sole benefit, he is barred by the former decree against them.

2. Complainant admits that, under the express terms of the deed of gift, Robert Willis took only a life estate, and there is no sufficient averment of a larger interest. The bill, therefore, shows no title or interest in complainant.

3. Robert Willis, and Bolls and wife, as the bill avers, had possession of these slaves for many years, by consent of the distributees, from 1835 to 1844, nine years. He thus had them as a loan, according to the bill, but there was no writing or other evidence of the transaction. Being thus in possession and apparent owner, he mortgaged them to Bernard, who had no notice of any adverse claim. Under such circumstances, our statute operates, and subjects the property to the mortgage. Hutch. Code 637, Art. 1, Sec. 2.

4. Defendants, Manly and Dodd, have had adverse possession, claiming the property as parcel of the estate of David Willis, since his death in 1844, making an adverse possession of eleven years before this bill was filed. This long possession, under claim of

ownership, vested the title in them as administrators of David Willis, and is a bar to this suit. Complainant avers, that after the death of Robert Willis, they had the slaves in possession, and that they permitted Bolls and wife and David Willis to use them. If the latter refused to surrender back, the lenders had their remedy at law; and they had a legal right of action, founded on their former rightful possession, against Manly and Dodd, when they claimed to hold adversely.

If it be said that these parties were tenants in common, the reply is, that David Willis conditionally sold the property to Bernard, which was constructively a destruction of it, and action lies. *Farr* v. *Smith*, 9 Wend. 338; *Hyde* v. *Stone*, 9 Cow. 230. A sale by one is a conversion, and trover lies. A mortgage is equally a conversion. *Smyth* v. *Tankersley*, 20 Ala. 212. If one tenant appropriates the property to uses for which it was not designed (mortgages it), and refuses to apply it to the purposes for which it was held by both, trover lies. *Agnew* v. *Johnson*, 17 Penn. State Rp. 373. The parties had remedy at law; and, therefore, on authority of the late decision cited by Mr. Yerger, they are barred.

*George S. Yerger*, for appellee.

The defendants demurred to the bill, and two grounds of demurrer are relied upon by them.

1st. That the decree in the first suit, where the distributees were complainants, is a bar to this suit.

2d. That Manly and Dodd have held possession since the death of David Willis, and that the claim of complainant as administrator of Robert Willis, is barred by the Statute of Limitations.

1st. Is the decree in the first suit a bar? Surely not. In that suit they claimed the property as their own, by virtue of the deed in North Carolina. They said after Robert Willis's death his property ceased, and the slaves were ours, not Robert Willis's. The decision of the court in that case was, whatever the operation of the deed might be. The complainants did not prove the execution of the deed under which they claimed. If they now filed another bill, claiming under said deed, and now had it legally proved, the first would be a bar, because they claim under a title decided against them.

To constitute a decree in a former suit, a bar in a subsequent one, the rule is, that it must be between the same parties, upon the same subject-matter, and in the same right.

The administrator of Robert was not before the court, for he was not in existence; he certainly is not bound by it. The distributees of Robert Willis, as distributees, were not before the court as parties, and they cannot be bound, even if they were complainants in this bill, as distributees. If they filed a new bill, claiming their right under the deed as remaindermen, they would be barred.

Again, the subject-matter is not the same. The subject-matter of the former suit was the individual right of complainants in that suit to their slaves, under the deed in North Carolina. The subject-matter of this suit is to secure these slaves as the property of Robert Willis. So the same point is not in issue.

In that case, they sued in their own right; the bill was filed in their own right; the decision was against them in their own right; and the court, in that case, as the opinion shows, would not permit them to recover as distributees, because the bill was filed in their own right. The decision in that case was therefore no bar.

If they had filed this bill as distributees of Robert Willis, a decree against them as individuals claiming in their own right, and not as distributees, could not be pleaded against them. For, to be a bar, both suits must be in the same right, and the same point must be in issue, and the subject-matter be the same. Story's Eq. Pleading, end of sect. 791,; Mitford's Ch. Pl. (by Jeremy), 237, 238, and 245; Cooper's Eq. Pl. 208, 210; and cases cited on next page of this brief.

The point in issue in the first case was, whether they, in their own right, under the North Carolina deed, were entitled. The point in issue in this suit is, whether the administrator of Robert Willis can recover the slave as his (Robert Willis's) property. The first asserted the slaves to be the property of complainants, in their own right, and not the property of Robert Willis's estate. This bill asserts the slaves to be the property of Robert Willis's estate. If the slaves, when recovered, should be distributed to them, it would be because they were distributees of Robert Willis. Can there be any difference in this case, in the rules of law, because they happen to be distributees of Robert Willis? Suppose some

other persons were distributees, would the first decree affect them? Surely not. How can it affect them?

So also, that decree to be binding, must be in same right, as well as same subject-matter, and same parties. *Scriven* v. *Joyner*, 1 Hill Ch. 252; *Jones* v. *Blake*, 2 Hill Ch. Rep. 629; *Singleton* v. *Gale*, 8 Porter Rep. 270; *Days* v. *Rosevelt*, 1 Paige, 35. And will not bind the right of any parties, as to matters not the subject of litigation. 1 Paige, 263.

2d. But the decree in the first case was right, for another reason. That bill was filed upon the supposition that, by the law of North Carolina, as in other States, a remainder in slaves could be created by deed. But, upon examination, it will be found that by the settled law of North Carolina, the remainder is void, and the whole property is vested in the person who has the life estate. So that the deed, in this case, vested Robert Miller with the absolute property.

This was the law of North Carolina, by repeated decisions of the courts, until it was changed by statute, as late as 1827. See North Car. Rev. Statutes, ch. 37, sect. 22. *Cutler* v. *Speller*, 2 Hayw. Rep. 130; *Nichols* v. *Cartwright*, 2 Murphy, 137; *Graham* v. *Graham*, 2 Hawks, 322; *Foscue* v. *Foscue*, 3 Hawks, 528; *Sutton* v. *Hallowell*, 2 Dev. N. C. 185; *Merron* v. *Williams*, 3 Dev. N. C. 263.

Will it be pretended that if A. claims property for himself, as remainderman, and the court decides he has no such right, that he is estopped from claiming it as the heir or distributee of the person who had the absolute right? Surely not; yet this is precisely the point before the court.

It is therefore manifest that the *decree against them* in the first suit is no bar to this suit.

But it is said the Statute of Limitations bars the complainant's claim.

At the time the adverse possession of defendants commenced, and at the time of the mortgage, the complainant had not been appointed administrator of Robert Willis. He was appointed in 1855.

The Statute of Limitations, it is well settled, will not bar a *claim*,

if at the time the adverse possession was commenced, there was no administration upon the estate. Angel on Limitation, ch. 7, pp. 55, 56, 57, and many cases cited in note 1, to p. 57.

But this precise point is settled by this court in the case of *Wiley & Wood* v. *Ford.* See Opinion Book F., pp. 439, 441.

That was a case in equity brought by the *distributees.* The Statute of Limitations was relied on.

Judge Handy, in delivering the opinion of the court, says : The statute in equity will be applied, where it would bar at law. But in this case it would not be barred at law, because, at the time of cause of action, there was no administrator or executor to sue, and as it was not barred at law, equity would not apply it.

Here the precise point is decided conclusively, and settles this case.

As to the jurisdiction of equity to recover slaves in specie, on account of the peculiar character of the property, it is well settled in this State ; more particularly in such a case as this. *Murphey* v. *Clark,* 1 Sm. & Mar. 221 ; *Butler* v. *Hicks,* 11 Ib. 78.

HANDY, J., delivered the opinion of the court.

The substance of the bill in this case is, that Robert Willis died intestate in this State in the year 1827, and that in April, 1855, letters of administration upon his estate were granted to Kidd, the complainant. That he owned, at the time of his death, certain slaves, sought to be recovered, and left certain named persons his distributees ; that in the year 1835, the slaves came to the possession of two of the distributees, one of whom was David Willis, as the undivided property of the estate, and that during that time, David Willis executed a mortgage of the slaves to one Barnard, to secure a debt due him, but without change of possession, and died in this State, in the year 1844 ; and the defendants, Manly and Dodd, were appointed his administrators, and took possession of the slaves as his property, and claimed them as such. That shortly after this, the distributees of the estate filed a bill in chancery against the administrators of David Willis, to recover the slaves, claiming them under a deed of gift executed in North Carolina to

Robert Willis, contending that a life estate only, was vested in Robert Willis by the deed, with remainder to his children, the complainants in that bill; and that it was finally decided by this court in that suit, that the deed under which they claimed was not legally proved to have been executed. The bill thus alleges, that by the law of North Carolina, this deed vested the absolute title to the slaves in Robert Willis, and that the complainant, as his administrator, is entitled to them, and that the party holding the mortgage claims the right to subject them thereto.

The defendants demurred to the bill, on the grounds, 1st, that it was barred by the Statute of Limitations and lapse of time; 2d, that it is barred by the former decree; 3d, that no debts are shown against the estate, or necessity for the action of an administrator. This demurrer was overruled, and thereupon this appeal was taken.

We will consider first the defence of the former decree, and in connection with it, the last ground of demurrer.

It is insisted that this defence is insufficient, because this suit is not between the same parties, and upon the same subject-matter, and in the same right, as the former decree.

As to the identity of the parties, it is sufficient if they are substantially the same, and it is not necessary that the suits should be between precisely the same parties. Story's Eq. Pl. § 791; Mitf. Pl. 248. Are not the parties then, beneficially interested in both the suits virtually the same, according to the allegations of the bill and the just legal inferences which must be drawn from the facts as stated? We think that they are.

It appears by the bill that the complainant's intestate died in the year 1827; and consequently, there was a lapse of about twenty-eight years before the grant of letters of administration, which did not take place until the decision of the former suit. It is not alleged that there are any debts unpaid, and if there were, they would be barred by lapse of time. The property appears to have been in the hands of the distributees, and if there had been outstanding debts, it is not to be supposed but that administration would have been taken of the estate at an earlier period. Under these circumstances, the presumption that there are debts, would be most unreasonable, and is not to be entertained; and, therefore, there could have been no necessity for taking out letters of admin-

istration for the purpose of paying the debts of the intestate. And the conclusion is not to be avoided, that the letters were obtained, and this suit instituted, exclusively for the benefit of the distributees. If a recovery should be had, the administrator, from the showing of the bill and from every probability arising from the circumstances, would have nothing to do but to hand over the slaves to the distributees, the same parties who instituted the former suit. He is a direct trustee for them, and they would be the beneficiaries of the decree, as substantially as if they were formal parties to it.

With respect to the identity of the subject-matter, it is plain that it is the same in both suits, to wit, the recovery of the slaves for the benefit of the parties entitled to them, who were the children of the intestate.

It is also evident that there is no substantial difference as to the right in which the children of the intestate claimed the slaves, or will be entitled to them, in the two suits. Both claims are in their own right, and in virtue of the deed to Robert Willis the intestate, the former claim being as remaindermen under the limitations of the deed, and the present, as distributees of Robert Willis, who is now conceded to have had the absolute title. It was entirely competent for them in the former suit to have set up their claim, as distributees of their father, in the alternative that they were not held to be entitled as remaindermen under the deed ; and the decree in either alternative would have been the same,—that they recover in their own right. And it is against the policy of the law and not to be tolerated, that parties should first make an experiment in litigation to assert their rights upon one ground, and failing in that, resort to another form and upon another ground, to assert the same right, and accomplish the same substantial end.

Secondly. Considering the distributees as the persons beneficially interested in this suit, and that the administrator is a mere naked trustee for their benefit, the Statute of Limitations is a valid defence to it. It will not do to say, under the circumstances appearing by the bill, that the statute did not commence running until the administrator was appointed. For it is well settled by this court, that the distributees had the right to sue and recover the property, when there was no administration and no debts shown. *Wood* v. *Ford*,

29 Miss. 65. For aught that appears by the bill, the right of action accrued to the distributees in the year 1835, and it distinctly appears that there has been an adverse possession in the administrators of David Willis, since 1844, a period of eleven years before the filing of this bill; and even before that time, that David Willis claimed title adversely, by executing the mortgage upon the slaves. During all this time, there was no impediment to the institution of a suit, by the distributees, for the recovery of the slaves. Under such circumstances, to entertain a suit brought at this remote day, for their use and benefit, would be to disregard the settled rules of courts of equity, in discountenancing stale demands, and to make substantial principles yield to mere forms.

It follows from these views, that the demurrer should have been sustained; and the decree is, therefore, reversed, the demurrer sustained, and the bill dismissed.