B. S. RICKS *v.* F. P. HILLIARD, Admr., etc.

<div style="float:right">45  359<br>86  656</div>

1. ESTATES OF DECEDENTS — WHEN THE HEIR AND DISTRIBUTEE MAY SUE FOR PROPERTY OF DECEDENT WITHOUT ADMINISTRATION. — If there be no valid enforceable claims outstanding in favor of creditors, the heir and distributee, without administration, may sue in chancery to recover the personal effects of the deceased, and compensation for their use.

2. CHANCERY PLEADING — PROOF CANNOT BE INTRODUCED ON A POINT, NOT IN ISSUE IN THE PLEADINGS. — Where the bill of a distributee seeking to recover without administration personal property belonging to the estate of the decedent, alleges there were no debts, and the answer makes no response to the allegations, the defendant cannot set up in proof a judgment held by third parties against decedent, because there is no issue as to this.

3. SUPREME COURT — PRACTICE — RULE AS TO EXCEPTIONS NOT TAKEN IN THE COURT BELOW. — Exceptions to reports of commissioners in chancery, to whom it is referred to compute a sum due, must be made in the inferior court. It cannot be made for the first time here.

APPEAL from the chancery court of Yazoo county. SHACKLEFORD, J.

The facts appear in the opinion of the court.

*Hudson & Nye,* for appellant.

The weight of the testimony as to the title of the slave is against the plaintiff in the court below, and by his own acts he has induced Ricks to purchase the slave, as free of all claim by him, 1 Story's Eq. Jur., § 385; 36 Miss. 174; 24 ib. 612.

The court of equity has not jurisdiction of a bill by a distributee to recover a chattel belonging to his decedent's estate, and remuneration therefor, before administration, where there are outstanding debts. 7 Smedes & Marsh. 724; 10 ib. 586.

The release of the judgment of Mrs. Montgomery can only take effect from its delivery, and so cannot change the status of this case. 41 Miss. 194.

The allowance for hire was excessive. The slave was never made useful, and was incapable of being made useful to the defendant. 1 Story's Eq. Jur., § 108.

*Garnett Andrews, Jr.,* for appellee.

Where there are no debts, the heir, without administration, may sue in chancery for the property inherited from his ancestors. 4 How. 455; 4 Smedes & Marsh. 707; 26 Miss. 579; 29 ib. 65; 26 ib. 583; 33 ib. 148; 38 ib. 576; Hill v. Boylan, 40 ib. 641–643.

The defendant could not avail himself of the judgment of Mrs. Montgomery except by a plea, or at least some notice in his answer, that he intended to rely on such a defense. Story's Eq. Pl., § 647 *et seq.;* ib. §§ 710, 712, 713, 714; Osgood v. Brown, Freeman's Ch. 392; Davis v. Roberts, Smedes & Marsh. Ch. 550; 9 Smedes & Marsh. 566; 32 Miss. 164; 37 ib. 584; Gaines v. New Orleans, 6 Wall. (U. S.) 716; Code 547, art. 44.

This court will not consider objections to the report of the commissioner, here made for the first time, and not raised in the court below.

SIMRALL, J.:

The original bill was brought in 1860, by W. P. Armstead, to recover specifically a slave named Jemima, and her hire, claiming as heir and distributee of his mother, who deceased in May, 1849. Ricks acquired possession of the slave in December, 1849, by purchase from William Philips, the father of Mrs. Armstead, and mother of W. P. Armstead, then about twelve years of age.

Three grounds for reversing the decree of the chancellor have been urged: 1st, that the chancery court did not have jurisdiction; 2d, that the weight of the testimony, as to the title to the slave, was with the defendant, Ricks; and, lastly, that the allowance for hire was excessive, and not warranted by the testimony.

The counsel for the appellee places the jurisdiction upon two considerations: 1st, that the "subject" of the suit was a slave, a family servant, possessing the "*pretium affectionis*," which appeals to the court of equity for the specific thing rather than its alternate value; and, 2d, that the complainant came in his right as distributee and heir, to get possession of the effects, and compensation for their use, which belonged to him in that right. It would be unnecessary to enter upon a discussion of the question, whether slaves could have been recovered generally by suit in chancery, or whether only those who had some specific and distinguishing value, implied in the term "*pretium affectionis;*" for, if a distributee can sustain a bill in chancery to get in the effects of an intestate, it matters not what was their nature or character, whether slaves or other personal property. If the circumstances exist in this case which entitle a distributee to sue in equity, the character of the property, whether slaves or not, is not an element in the question of jurisdiction. Generally, the chattels of an intestate go to an administrator, the title remaining in abeyance until he is appointed; it then relates back to the death of the deceased. Generally, those who have rights to and claims upon the property of a decedent, as distributees and

creditors, must work them out through a legal representative, appointed by the proper tribunals. It can hardly be said (if property is left) that the law contemplates a vacancy in the legal representation. The next of kin are preferred for the administration; if none of them qualify in the time limited, then the creditors stand next in right; if none of them apply, then the proper court may commit the administration to the sheriff or the public administrator. It is because of the conflicting interests of those who have rights to and claims upon the estates of decedents, that the law devolves upon the legal representative, as trustee, the entire personal property and chose in action. He deals with the estate as the law directs, meting out to creditors and distributees the measure of their claims and rights.

But there are circumstances in which the distributee may resort directly to a court of equity. The doctrine deducible from the cases in our books is, that if there be no valid, enforcible claims outstanding in favor of creditors, then the heir and distributee may sue in chancery to recover the personal effects of the deceased, and compensation and hire for their use. All the cases agree in that proposition. When we come to examine the several cases, some of them, in general terms, place the jurisdiction on the narrower ground "that there was no administration granted in this State." We apprehended, if the utterances of the court were read in reference to the special facts in each particular case, that the conflict is more apparent than real. In the early case of McCrea v. Walker, 4 How. 455, "the fact that no administration was had on the estate of Mrs. McCrea, through whom the complainant claimed as distributee, was held decisive of the question of jurisdiction. To the objection, that the complainant ought to pursue his right through the probate court, the response was, there was no administrator, and therefore no party amenable to that jusdiction. In Favre's Heirs v. Graves et ux., 4 Smedes & Marsh. 70, the principle is again broadly stated, that if there is no administrator, the distributees are not bound to take out such letters in

order to assert their rights.　In Ball v. Griffin, 26 Miss. 582, the exception to the jurisdiction was again pressed.　But in that case the husband was permitted to recover in chancery the slaves, etc., to which he succeeded on the death of his wife.　See, also, Wood v. Ford, 29 Miss. 65 ; Archer v. Jones, 26 ib. 589.

The court, in Hill v. Boyland, 40 Miss. 462, adverting to the cases, notes the fact that in some of them it was averred that there were no creditors, or that the debts were barred by the statute of limitations.　In others, the only averment was that there was "no administration."

We think the principle is established by the authorities, that the distributee shall not be required to take out letters of administration in order to assert his right.　Accepting as the meaning of the court that, where the entire equity is in them, they shall not be put to this additional expense and delay, merely to get in the property for distribution, we think the principle is sound.　The distributee does not take directly from the deceased intestate ; according to our system, he is beneficial owner of the personal property charged with the debts.　His legal title dates from a delivery over to him by the legal representative, prior to that he has but an equity.　His rights are subordinate to creditors.　It has been held in this court that distribution by the administrator is void against creditors, and that an execution on a judgment, against the administrator, may be levied on the chattels in the hands of a distributee.　If there are no creditors, then the equitable title of the distributee is complete, she is the only party having interest in the property.　If a presumption may be indulged that creditors are barred, or if a reasonable time has elapsed since the death of decedent to give creditors a full opportunity to open on administration, or have it committed to the sheriff or public administrator, and they have failed to do so, a stranger, who is called to an account at the suit of the distributees, ought not to be permitted to defeat a recovery, for the reason that there are or may be outstanding debts.　A recovery by them does

not cut off creditors or put them in a worse predicament than they were before. Ten years have elapsed since the recovery of the judgment against the mother of W. P. Armstead (relied on as an outstanding debt against her), before this suit was brought. After so long a time, with no steps taken by the creditors to take out letters, or otherwise move toward its collection, it would be inequitable to permit Ricks, the defendant, to set up the right which this stale creditor may or may not have, might or might not assert, to cut off the right of the distributee. But no value or influence, as affecting the complainant's right, can be attached to this judgment, as a debt, in the light of its history and import as given by the record.

The bill alleges that there were no debts against Mrs. Armstead. The answer makes no response to the allegation; it neither admits, nor denies, nor professes ignorance, nor insists upon proof. A transcript of the judgment was filed as evidence by the defendant. The complainant excepted to its competency and relevancy because it was barred, and because it could be referred to no allegations or issue made by the pleadings. The record is silent as to what, if any, disposition was made of the exception. Some time after the institution of this suit, Mrs. Montgomery (who recovered the judgment before her marriage) and her husband released this judgment debt to the administrator of W. P. Armstead. It is said that the release is void for want of consideration and because Mrs. Montgomery is covert. We do not appreciate the force of the objection. It is evident that Mrs. Montgomery is asserting no claim against the property and money involved in this suit; that she has abandoned her debt. If she, in the most solemn form, denudes herself of her rights as creditor, it does not become the defendant to take them up and insist upon them in her behalf. We are well satisfied that this judgment is no obstruction to the complainant's right of recovery. If the defendant relied upon an outstanding debt to overcome the complainant's equity, he ought, by his answer, to

have given notice to the complainant that he took issue on that point, and thus have made it a subject on which his adversary should be prepared with evidence.

We think that the chancery court might well have come to the conclusion that the slave was the property of Mrs. Armstead.   The preponderance of the testimony is in favor of a gift by her father to her of this slave.   But as slaves were emancipated before the decree was made, the only question remaining was the value of the services during the time of her detention as a slave by Ricks.

Two reports were made by a commissioner as to the annual value of the services of the slave.   On the second reference specific instructions were given by the court.   The appellant made no exceptions to either of these reports. The last report was confirmed on motion.   We think that it is too late to object, for the first time in this court, that the hire was excessive ; that question ought to have been brought to the notice of the chancellor.   We could then have reviewed his decision upon the point.   Ample opportunity is offered by the rules of practice to except to the report of the commissioner.   If none be taken in the inferior court, this court ought to infer that the parties were satisfied.

Let the decree be affirmed.