[No. 2078.]

### AUSTIN v. SNIDER ET AL.

**Parties—Appeal Bonds—Action Upon.**

The obligee in an appeal bond died pending the appeal, and devised her entire estate to plaintiff charged with the support of her husband during his life. The husband was administrator with will annexed. No debts existed against the estate of testatrix. The husband died intestate, without any debts and leaving plaintiff as his only heir. No administrator was appointed for the husband's estate, nor was any one appointed to succeed him as administrator of his wife's estate. Held, not necessary to appoint an administrator to prosecute an action upon the appeal bond, but that such action could be prosecuted by plaintiff in her own name.

*Appeal from the District Court of El Paso County.*

Mr. CHAS. F. POTTER and Mr. R. T. McNEAL, for appellant.

Mr. ARTHUR CORNFORTH and Messrs. GUNNELL & HAMLIN, for appellees.

.          GUNTER, J.

Rose Rinehart sued Snider to recover real estate; had judgment below and on appeal; pending appeal (1890) she died, devising her estate to appellant herein charged with support, during his life, of the husband of decedent, Charles Rinehart. The husband was administrator with will annexed; no debts existed; none were proven against her estate.

January, 1894, Charles Rinehart died intestate; without estate; without debts; sole heir appellant; no administration upon his estate; no one was appointed to succeed him as administrator of the estate of Rose Rinehart.

This action instituted April, 1897, is by appellant in her personal capacity upon the appeal bond running to Rose Rinehart in *Rinehart v. Snider, supra.*

It is contended the complaint alleging the foregoing facts fails to state a cause of action in this: It does not show a right of action in the plaintiff. Appellees insist that only the personal representative can maintain this action.

At the institution of this action appellant was the sole legatee of this bond and of all rights of action thereon. Had administration on the estate of Rose Rinehart then existed the sole interest of the personal representative therein would have been as trustee to discharge the debts of the deceased and distribute the resdiue to appellant, the sole legatee. If no debts existed the personal representative then would have held as trustee for the sole beneficiary, this appellant. There were no debts. There was no personal representative at such time, Charles Rinehart, the administrator, with will annexed, of Rose Rinehart, having died over three years before without successor in such capacity. At the institution of this action appellant was the sole beneficial owner of the bond and the rights of action thereon. If Charles Rinehart ever had any interest in the bond and the rights of action thereon, they had been eliminated by his death and transferred, as to the beneficial interest, to appellant herein, he, as stated, having died intestate, without estate, without debt, his sole heir appellant. There being no personal representative of Rose Rinehart, there having been no administration on the estate of Charles Rinehart, there being no debts against either

of the deceased parties, this appellant being the sole distributee of each, there were no parties save appellees to question the right of recovery on this bond by appellant and the only interest of appellees as to who is party plaintiff herein is that the judgment rendered may protect them against further liability on the bond. Why require appellant, the real owner of the rights involved in this action, to incur the expense and delay incident to appointing another personal representative of the estate of Rose Rinehart to taking out letters upon the estate of Charles Rinehart, when such representative would have no office to perform except to bring this action and turn the proceeds over, in case of recovery, to appellant? We do not believe the reformed procedure requires this useless and circuitous action. The authorities sustain this conclusion.

"Every action shall be prosecuted in the name of the real party in interest   *   *   *   ."—Mills' Ann. Code, sec. 3; Session Laws 1887, sec. 3, p. 97.

Among the fundamental principles of the code is, "The application to this 'civil action' of the familiar equitable rather than legal rules, methods and principles, so far as practicable, and especially in reference to the parties, the pleadings,   *   *   *   . It is evident from the most cursory examination of this code that its authors, and presumably the legislature, intended that the various provisions which they introduced in reference to the parties to an action, to the pleadings therein   *   *   *   and which were a concise statement of the well settled doctrine of equity relating to these subjects, should apply fully and freely to all actions which might thereafter be brought, and should not be confined to actions that, under the former practice would have been equitable."—Pomeroy's Code Remedies, 3d ed., § 28, p. 27.

"Two general and natural principles controlled

its form (the suit in equity) : First, that it should be prosecuted by the party really in interest,   *   *   * and, secondly, that all persons whose presence is necessary to a complete determination and settlement of the questions involved shall be made parties, so that in one decree their various rights, claims, interest and liabilities, however varying in importance and extent, may be determined and adjudicated upon by the court.''—Pomeroy's Code Remedies, § 112, p. 142.

"It is a well established general rule that heirs, devisees or legatees cannot sue in their own names for the recovery of personal property of a decedent, until after distribution in probate.   *   *   *   To this general rule, however, the courts, particularly courts of equity, have recognized various exceptions. Thus, where there is collusion or insolvency on the part of the personal representative, or some special case, the heir has been allowed to sue.''—Note to *Hubbard v. Ricard,* 23 Am. Dec. p. 202.

In *McDowell v. Charles,* 6 John. Ch. 132, Chancellor Kent permitted a party entitled to a distributive share of the personal estate to sue the debtor and co-heir to that estate for her proportion of the fund in his possession. In the course of the opinion he said: "The plaintiff and the defendant are the only persons interested in the fund, and the husband of the plaintiff once obtained letters of administration upon the estate of Mary Charles, but those letters were revoked by the procurement of the defendant, and none others have since been granted. It is to be presumed, from the facts charged in the bill, and admitted by the demurrer, that no person has administered upon the estate, and that there are no creditors of the estate, nor any other person but the plaintiff entitled to call defendant to account. The case warrants the inference that the defendant does not wish or intend to account to any human being for the debt

which he owes the estate. If the plaintiff cannot sue, there is no person to call the defendant to account, and the plaintiff is to lose her whole share of the fund. It is a peculiar case, and one in which, taking the facts in the bill to be true, the plaintiff ought to be permitted to sue, and if we examine the adjudged cases on this point, we shall appear to be well authorized to consider this case as one of several exceptions to the general rule.''

In *Wood et ux. v. Ford,* 29 Miss. p. 57, the complainant, as one of the distributees of the estate of his deceased father, sued his mother, codistributee, and her second husband for distribution. It was contended that distribution could not be made without the appointment of an administrator. The court said: ''As a general rule it is undoubtedly true that distribution must be made by the probate court, and through the medium of an administrator or executor. Yet there are cases in which a court of chancery will exercise the jurisdiction. One of these cases is where no administration has been granted in this state. In such case, it is settled by this court that a court of chancery has jurisdiction to decree a division of the property and an account for hire, and that the distributee is not compelled to take out letters of administration    *    *    *    . It appears in this case that the estate of the intestate had been finally settled and all its debts discharged, and that there was no longer an administrator. Nothing remained to be done but to distribute the property and assets among the parties entitled. To compel a distributee to take out letters of administration, execute bond, incur all the expense and trouble, and submit to all the delay incident to a regular administration and settlement of the estate, would under such circumstances be a most useless and unreasonable requirement.''

In note to *Hubbard v. Ricard, supra,* it is said:

"And it is held that where there are no debts, where those interested in the estate, being of full age and capable of acting for themselves, have agreed among themselves to distribute the estate without administration, and there is no unfairness or fraud, such distribution is good and effectual, and no further administration is necessary."

The equitable rule recognizing exceptions to the above common-law rule has been liberally construed under the code. In *Patton v. Gregory,* 21 Tex. 513, the court said: "The old rule that heirs cannot sue unless there be collusion or insolvency on the part of the executor, or some special cause, should be liberally construed under our system which subjects not only personal but also real property of an estate to administration."

*Magel v. Milligan,* 150 Ind. 582, 65 Am. St. Reports 382, was an action by heirs upon notes given to their ancestor. It appeared that the estate was without debt, and there was no administrator. The court sustained the action and said: "Where, as in this case, an action is brought by heirs to recover a debt due an ancestor, it is necessary to allege and prove that the debts of the ancestor have been paid, and the estate settled, or that no letters of administration have been granted. The reason for this rule is a very sound one. So long as there is an administrator, he is entitled to recover all debts due the estate; besides the heirs can have no right to sue for and recover debts due the estate when such amounts may be needed to make payment to the creditors of the estate. The claims of creditors are paramount to the rights of heirs."

In *Finnigan v. Finnigan,* 125 Ind. 264, the court said: "The general rule is that an administrator or executor alone can maintain an action for the recovery of the personal property of a deceased person, or

for the recovery of a debt due to his estate at the time of his death. That rule prevails in this state with the single exception that where there is no administrator or executor to prosecute the action, and no debts to be paid by the estate, the heirs may prosecute the action." Se also *Regien v. Freeman,* 75 Ind. 398.

In *Hyde v. Stone,* 7 Wendell 354, an action at the common law was sustained wherein the heir sued to recover value for certain personal property inherited and appropriated by a third party. It appeared there had been no administration and no debts.

In *Cross v. Carey,* 25 Ill. 461, it is held that upon the grant of administration that the legal title to personal property of an intestate vests in the representative of the estate in trust for the heirs, distributees and creditors, but the equitable title vests in the heir subject to the payment of the debts immediately upon the death of the ancestor. It was further therein held that the heir could sell the personal estate and pass title, although no letters of administration had issued, provided there were no debts.

As this action under the authorities will lie, it will constitute a plea in bar to further liability of appellees on the bond involved.

See in addition to above authorities, *Wilkins v. Ellett, Adm.,* 108 U. S. 256.

In support of appellees' contention is cited *McKee v. Howe,* 17 Colo. 538, 31 Pac. 113. An administrator sued to remove a cloud from title to certain real estate belonging to his intestate. The court held that the real estate descended to the heir, and that in the absence of an averment that the decedent's estate was insolvent, or that it was necessary to sell or dispose of real estate to pay debts, or that there were any debts against the decedent's estate the administrator had no interest whatever in the cause of action, and that the complaint did not state a cause of

action as to him. That the administrator had no interest in the cause of action was decisive of the case. The court in the course of the opinion suggestively observes: ''In some states having statutes regulating the authority of the administrator over the real estate of the decedent similar to ours, it is held that the administrator may maintain an action to set aside a fraudulent conveyance of the decedent's real estate, for the purpose of subjecting such real estate to the payment of debts; but the administrator must in substance aver and prove that there are debts against the estate, and that the real estate which he thus seeks to recover is necessary and liable to the payment of such debts.''

In *Hall v. Cowle's Estate,* 15 Colo. 347, 25 Pac. 705, also cited by appellees, the court in the course of its opinion, said: ''If the mother * * * living had an enforceable claim against William or his estate, the right, or any portion of it, did not descend to the heir at law, Helen S. Hall. Upon the death of the mother, whatever of property right she may have had in it went to her legal representative, whoever that might be; and only in his right of representation could he sue for and collect it.''

This statement of the law was correct as applied to the facts in that case, and is not in conflict with the conclusions we have reached herein. Numerous other authorities are cited by appellees. It would serve no useful purpose to review them in detail. No one of them is upon facts substantially the same as here presented. Some of them announce principles perhaps in conflict with conclusions we have reached herein. Our conclusions, however, are sustained by abundant authority, and are in harmony with code procedure. Appellant was the real party in interest in this action,

the complaint stated a cause of action in her.   The lower court, in ruling differently, erred.

Judgment reversed.                    *Reversed.*