No. 70.—JOSIAH W. JOSEY, administrator, &c. of Henry Audulf, deceased, and others, plaintiffs in error, *vs.* DAVID C. ROGERS and JOHN AUDULF, defendants in error.

[1.] In England, as a general rule, a cross-bill must be brought before publication has passed in the original cause; and in this State, before the pleadings are made up.

[2.] Upon special application, showing sufficient grounds, the Court will extend the time for filing a cross-bill.

[3.] Where the cross-bill is brought for discovery as well as relief, an allegation that the complainants had confidently relied on *aliunde proof* to sustain their defence to the original bill, and that the fact had only come to their knowledge within the last three days, that they would wholly fail in the necessary testimony to support their answers without resorting to the consciences of the defendants, is a sufficient showing to acquit the complainant of *laches;* and especially where it does not appear that the complainant in the original bill has been urging the same to a hearing.

[4.] The charge that the complainant can only obtain evidence of *many* of the material facts upon which the bill rests, is sufficient to entitle the party to discovery, without specifying any particular fact previously alleged.

[5.] A cross-bill should not introduce new and distinct matters not embraced in the original suit; but where it seeks discovery to enable the defendant to protect himself against a recovery in the original bill, or sets up any special matter by way of estoppel or in bar, it is not obnoxious to this objection.

[6.] Where an estate has been irregularly administered by the consent of the heirs at law, it does not constitute the agents or actors such tortious executors as will prevent them from retaining out of the assets in their hands, as against their co-distributees, an amount sufficient to discharge a debt due them by their deceased intestate in his lifetime.

[7.] Minor heirs cannot be prejudiced by an agreement made between those who are of age, that the estate of the ancestor may be managed and distributed without an administration. Whatever has been done beneficial to the infants, will be sanctioned; not otherwise.

In Equity, in Stewart Superior Court. Decision on demurrer, made by Judge POWERS. April Term, 1853.

Henry Audulf died in 1844, intestate, leaving a large estate. David C. Rogers and John Audulf, took out temporary

letters of administration on the estate, under which they took the same into possession.  Some four years thereafter, Josiah W. Josey, who was neither a creditor or legatee of the estate, applied for and obtained permanent letters of administration upon said estate, and filed his bill against Rogers and Audulf, calling upon them to account to complainants of and concerning said estate.

To this bill, defendants answered, setting forth particularly their actings and doings in the premises, as well as an agreement and understanding between them and the other legatees of the estate, that they should proceed to act and settle the estate under the temporary letters, in order to save expense, &c. &c.

In 1852, the defendants in the first bill, to wit: Rogers and Audulf, filed their cross-bill against Josey, for the purpose of protecting themselves, under a contract and agreement made and entered into between the legatees of said estate, to the effect that they, the said Rogers and Audulf, should proceed to settle and distribute the estate under the temporary letters, which they obtained in 1844.   In the bill, they claim that Henry Audulf was indebted to each of them in his life time, and pray that they be allowed to retain the same in their hands.   They allege that the debts of the estate have all been paid; and give as an excuse for not filing the cross-bill sooner, that it was not until within three days before the filing of the bill, they had ascertained they would be unable to defend themselves against the bill of Josey by *aliunde* testimony.

To this bill, Josey filed a demurrer, upon the following grounds :

1st. That complainants had not sued out their cross-bill within the proper time from that of the filing of the original bill—the one having been brought to the April Term, 1848, the other to the October Term, 1852.

2d. That complainants have alleged no good and sufficient cause for their long delay to file said cross-bill.

3d. That complainants have introduced new and distinct matter into their said cross-bill.

4th. That those parts of complainant's bill which allege and charge, "that they can only obtain proof of many of the facts hereinbefore stated, by resorting to the consciences of defendants, your orators have been laboring under the impression and conviction, that they could prove said facts as hereinbefore stated, by *aliunde* testimony; but they have found within the last few days, that they are utterly unable to prove many of said facts in any other way than by resorting to the consciences of said defendants," are uncertain, indefinite, and wholly insufficient for the purpose of obtaining a discovery, and that complainants were not entitled to a discovery of the facts in their bill, under the said loose and uncertain allegations.

5th. That complainants are not entitled to the relief they seek by their cross-bill, neither as to the sums they have sought to retain, nor as to the set-off they have pleaded to the demand of the said Josiah W. Josey, as administrator upon the estate of Henry Audulf, deceased, against them, the said David C. Rogers and John Audulf, as executors *de son tort*, of said Henry Audulf, deceased.

Judge Powers, presiding for Judge Iverson, overruled the demurrer on all the grounds taken, and to this decision counsel for Josey, the defendant, excepted.

Worrill, for plaintiffs in error.

Tucker and Benning, for defendants in error.

*By the Court.*—Lumpkin, J. delivering the opinion.

Various grounds of demurrer were taken to the cross-bill filed in this case; all of which were overruled by the Circuit Court.

[1.] The two first, I propose to consider together. It is insisted that the cross-bill was not filed in time—four years having intervened after the pleadings were made up under the

Josey and others *vs.* Rogers and Audulf.

original bill, and no sufficient excuse having been rendered for the delay.

In England, the practice is to require the cross-bill to be filed before publication has passed in the original cause.

[2.] In this State, it must be done before the pleadings are made up, unless sufficient cause is shown to the contrary. Why the original bill in this case was permitted to sleep for four years after the answers were in, and the replication was filed, does not appear.

[3.] Nothing was done under the original bill, from 1848 to 1852, when the cross-bill was filed; and it alleges as a reason, that until within three days previously, the complainants had confidently relied on making out their defence to the original bill by *aliunde* proof; and that it was the discovery of the fact that they should utterly fail to sustain their defence against the original bill, without resorting for testimony to the consciences of the opposite party, which prompted them to bring their cross-bill. The truth of this allegation is admitted by the demurrer. And we deem the reason satisfactory for the lapse of time which transpired.

The cross-bill is a mode of defence against the original bill; and it may be filed for discovery or relief, or both. It may be just as necessary for the defendant to the original bill to resort to the conscience of the complainant for proof to support his defence, as it is for the complainant to appeal to the conscience of the defendant to sustain his bill.

[4.] But it is objected, that the averments in the cross-bill are too vague to entitle the complainants to the discovery which they seek. They charge that they can only obtain evidence of *many* of the facts stated in their bill, by addressing themselves to the consciences of their adversaries. As a matter of practice, it would be better to specify distinctly the facts respecting which, the complainant seeks to purge the conscience of the defendant. If the allegation be true, however, as to any *one* of the material charges upon which the equity of the bill is predicated, the party is entitled to the answer of the opposite side. *A fortiori*, may they ask it

when *many* of the facts cannot be established in any other way.

[5.] As to the ground that the cross-bill does not relate to the same subject-matter as the original bill, we hold that it is not well taken. A cross-bill, we admit, must be confined to the subject-matter of the original bill. An entire departure from it, is not allowable. If a bill is filed for a certain purpose, the defendant cannot, by a cross-bill, bring into litigation in that suit, all causes of action which he may have against the complainant, unless there exist some special circumstances, such as insolvency, non-residence, &c. which would render it necessary, in order to avoid irreparable injury. Thus, if a bill be filed for a specific execution of a contract for land, the defendant cannot, by a cross-bill, bring into litigation a fraud practised on him by the complainant, in swapping horses, or a debt due by the complainant, unconnected with the contract concerning the land, sought to be enforced. What is the subject-matter of the original bill here ? It proposes to charge the defendants with the estate of Henry Audulf, deceased ; and for their mal-appropriation of the same, to withdraw what is left of the assets from their hands, and to inculpate the defendants as executors in their own wrong, for intermeddling therewith.

Now, the cross-bill not only meets fully the case thus made, but sets up new matter by way of defence, and which it was not competent for them to do by way of answer, namely, that they have acted in the premises, not as volunteers, but by virtue of an express agreement made between the heirs and distributees, there being no creditors whose debts are unpaid, to interfere, or to make a regular administration necessary. And if this be true, are the parties not entitled to the benefit of this defence to save them from being held *tort feasors* in this business ? Such was the view taken by this Court in the analogous case of *Turk vs. Turk and others*, 3 *Kelly*, 422. William Turk, Senior, died intestate, leaving a small estate, and his widow and four children, his only heirs and next of

kin.   The widow remained in possession of the property with her children, until her son William became of age, who took the control and management, for the benefit of the family; sold a portion of the negroes; advanced to his brothers and sisters money and property for their support and maintainance, and by way of settlement, as they married or became of age.   On the heirs becoming of full age, they agreed to submit to arbitrators the settlement of the estate, who made an award, which was acquiesced in and executed.   Subsequently, Theodore Turk, a grand-son, being dissatisfied, took out administration, and filed his bill for the recovery of the whole of the assets which had come to the hands of his uncle, taking no notice whatever of the reference which had taken place, and the settlement under it.

The defendant, William Turk, filed a cross-bill against his nephew, setting forth the foregoing facts, and alleging that there were no outstanding debts against the deceased, and praying a perpetual injunction against the complainant.

To the cross-bill, a demurrer was interposed, on two grounds: 1st. Because it contained no equity; and 2d, because the several matters therein charged, might have been set up by way of defence to the original bill.   On the last ground, the demurrer was sustained, and the cross-bill dismissed. Upon writ of error, this judgment was reversed, this Court holding that a cross-bill was the only mode by which the defendant could get relief against the administrator and co-heirs.   Neither the Circuit Judge nor this Court, doubted but that the cross-bill was *replete* with *equity*, and that it related to the same subject-matter.   And the principles of that decision clearly cover this case.

[6.] Again, it is urged that the complainants in the cross-bill, being executors *de son tort*, are not entitled to retain out of the assets in their hands the amounts severally due them by the intestate in his lifetime.

We apprehend that it is a mistake to consider these parties as wrongful executors, for the purposes of this litigation. Having taken out temporary letters, and possessed themselves

of the estate, they proceeded to wind up the same, as though clothed with authority of law, under a contract to that effect, made with their co-heirs. To the creditors of the estate, had there been any, they would undoubtedly be liable as intermeddlers; not so, however, to their co-distributees, who were parties to the agreement. Nor is there anything illegal in entering into such an arrangement. It saves cost and expense, which is a matter of some consequence in a small estate.

And why not allow them to retain in their hands the sums respectively due them by Henry Audulf in his lifetime? It is not pretended that the assets are needed to pay creditors of higher dignity, nor indeed of any other grade. Indeed, the cross-bill charges expressly, that there are none. And for the purposes of this investigation, that averment is true. As against the other heirs then, they have a right to retain a sufficiency to discharge the demands due each of them.

But it is further insisted under this head, that a debt due to them by the intestate in his lifetime, cannot be set-off by a liability which they have incurred to the estate since his death. And in a conflict between creditors, this doctrine is true, and would be enforced. But such is not this case.

[7.] It appears from the record, that one Edmund C. Beard had intermarried with one of the daughters of Henry Audulf, who died before her father, leaving several minor children, who were entitled of course, to the share of their grand-father's estate, which would have descended to their mother, had she survived her father. Beard, assuming to act as the guardian of his children, was present at the making of the agreement under which Rogers and John Audulf acted, and gave his consent thereto in behalf of his children. But they cannot be prejudiced by this contract. And so far as their rights are concerned, the Court should see to it in the final decree to be rendered in the premises, that their interests are as fully protected, as though no such understanding had existed. If the other parties, who were of age, and capable of

contracting, are estopped by their agreement, as they are, these minors are not.

And with this explanation, we affirm the judgment of the Superior Court.