### Sasser *vs.* Sasser.

1. A husband cannot use his wife's separate money to buy property for himself; and if he invests her funds in real estate in his own name, equity will fix a trust upon the land; and having jurisdiction for one purpose, it will do complete justice and give full relief between the parties.

2. Where a wife filed a bill against her husband, to have an account of dealings between them, and to fix a lien upon property in which her husband had invested her funds, and the defendant claimed that such money as he had used had been given to him absolutely by his wife, there was no error in charging that "whenever the question arises as to the passing of property from the wife to the husband, it must be closely scrutinized, if the husband claims it as a gift to him; and it must clearly appear that it was a free and voluntary gift by the wife to the husband; and if the evidence does not clearly establish that the same was a gift, then the husband is liable to the wife for all such property as went into his hands and was used by him."

3. Matters of practice, and especially the opening of defaults, are largely in the discretion of the court. Where a defendant, at the first term, filed a demurrer to a bill, which was heard at a subsequent term, and overruled, and after the trial had proceeded, and the testimony on both sides had closed, he asked leave to file an answer, there was no error in requiring him to pay costs before so doing.

4. Under a bill filed by a wife against her husband for an account of the dealing between them, and to trace funds of hers invested by him in land in his own name, a portion of the answer, in the nature of a cross-bill, which sought to obtain the custody of the infant child of the parties, alleged to be held by the wife, who had separated from her husband, and to enforce her return to his home, and to enjoin certain alimony proceedings instituted by her, was not germane to the main bill, and was properly stricken on demurrer.

5. Where it was sought to show that funds and property of the wife had been used by the husband, including a certain promissory note which had been collected by the husband, except a small credit, there was no error in admitting parol evidence as to the amount of such note so collected, the object being not to go into the contents of the writing, but only to show the amount collected and used by the defendant belonging to the plaintiff.

6. There was no error in allowing complainant's solicitor to show that demands were made on the defendant for a settlement of the matters in controversy, and the refusal of the latter to comply with such demand. This differs from admitting in evidence negotiations for a compromise.

7. The evidence is sufficient to sustain the verdict as to the amount found in favor of the complainant against the defendant.

(*a.*) Although the entire amount found to be due was not invested in the land on which a special lien was decreed, yet, as a decree would bind all the property of the defendant from its date, including such land, it does not concern him whether the lien be general or special; and there being no contest in this case on the part of other creditors or holders of liens, the fixing of a special lien did no harm to the defendant.

(*b.*) *Semble,* that a wife need not be living separately from her husband in order that money earned by her by sewing during coverture should form a part of her separate estate, and that such money is an acquisiton which belongs to her.

October 2, 1884.

Husband and Wife. Trusts. Gifts. Equity. Liens. Practice in Superior Court. Cross-bill. Evidence. Compromise. Practice in Supreme Court. Before Judge CLARKE. Early Superior Court. April Term, 1884.

Reported in the decision.

BACON & RUTHERFORD, for plaintiff in error.

H. C. SHEFFIELD, by J. H. LUMPKIN, for defendant.

HALL, Justice.

The main purpose of the bill filed in this case was to trace certain funds of the wife into land purchased by the husband, and to have an account of the dealings between them, and a decree for the amount found to be due from him to her. Without taking this account, from the character of the dealings between them, it would have been impracticable, if not impossible, to attain the object for which the bill was filed. That equity had jurisdiction to fix the trust on land into which the wife's money had gone, and to declare her lien upon it, is undeniable; and it is equally clear that, if it has jurisdiction for one purpose, it has it for all, so far as concerns the complete adjustment of the transactions in dispute; it does nothing by halves, but having the parties rightfully before the court, it will do complete justice between them, and will proceed to give full relief. Code, §3085. The bill alleges that, on January 1st, 1878, she was married to plaintiff in error, and they lived together until April 1st, 1880, when they separated; that she is in possession of their only child; that while she was living with her husband, she advanced to him certain money and notes, and with them he bought certain lands; that since the separation, she has demanded of him to return her the money, or to give her enough of the land to pay her, but he refused to do so; that she has proposed to him various ways of settlement, all of which he refused, declaring that, if she got any money from him, she would have to get it by law, and that he knew how to prevent her getting any of it; and that she believes that he intends to defraud her of her

money and interest in the lands in which it is invested.*
She prays judgment of the court for the amount due her,
and for decree requiring defendant to make titles to her
to so much of the land as will pay her ; also for injunction
and receiver.

To this bill plaintiff filed an amendment, in which she
prays that defendant be decreed to be trustee for her as
to all of the property, to the extent of the funds of hers
applied by him in the purchase thereof, and for judgment
against him as such trustee, and that the property be de-
creed to be subject.

A demurrer was filed to the bill, on the following
grounds :

(1.) Because there is no equity in the bill.

(2.) Because the complainant has a complete common
law remedy.

(3.) Because the complainant cannot maintain the said
suit in the capacity in which she sues, and under the alle-
gations in said bill.

The court overruled the demurrer, and then required
the defendant to pay the costs before he would be allowed
to file his answer. Defendant paid the costs and answered
the bill, in which he admitted the marriage and separation,
but denied that his wife ever advanced him any money,
except $30.00 in money and a note, which she gave him as
an absolute gift. [The judge certifies that the evidence
had closed on both sides before it was proposed to file an
answer.]

The following portions of defendant's answer were
stricken :

"And, at the same time, carried off respondent's child, to whom
he is devoted, and his said wife has refused to permit the child to
visit respondent, or permit respondent to visit his own child. Re-
spondent shows that, notwithstanding all this, he has earnestly en-
deavored to induce his wife to return to his home, but she has per-
sistently refused to do so. Respondent shows that his home *is now*

---

*It was also alleged that the husband had no property except that sought to be
subjected to the wife's claim.

open, and always has been open, for the comfort, support and protection of his wife and child. And respondent shows that he has never refused to support his wife and child, but has always been ready and willing to do so; but submits that he should be allowed the right and privilege of every other married man to support his own family at his own home; and that he has, since his marriage, labored earnestly and laboriously to accumulate what he could to make that home as comfortable as possible; and this home stands now, with all of its doors open, ready to receive her and respondent's child, without let or hindrance; and respondent most earnestly submits that his wife should not be permitted or encouraged to break up his home, and undo what she has freely and voluntarily done. Respondent admits that it is true, as charged in complainant's bill, that at the time when this bill was filed, his wife had brought a suit for divorce; yet respondent shows that, after several years of litigation, in which his wife had put him to great expense, more than the small sum which she had given him, the court decided that she had no grounds for divorce or separation. Respondent further shows that, since the courts have decided that the said complainant has no legal grounds for a divorce, or for a separation from bed and board, the said complainant has filed an application for alimony, and praying a judgment against this respondent. Therefore, respondent files this, his answer, in the nature of a cross-bill, and prays the decree of this court awarding him the custody of his child. And respondent further prays that, as it has been decided by the courts of the country that his wife had no grounds for divorce, either total or partial; that the complainant be decreed and required to return to the home of respondent, where she will be gladly and affectionately welcomed, and made as comfortable as the means of this respondent will admit. Respondent further prays that the said suit for alimony be enjoined from proceeding further against him, and that he may be relieved from the trouble, harassment and expense of defending the same."

The plaintiff was introduced as a witness, and swore substantially to the allegations in her bill. Her lawyer, H. C. Sheffield, was also introduced, and testified to making various attempts to a settlement between the parties. Defendant was introduced as a witness, and denied substantially the allegations of the bill, except as admitted in his answer.

The jury found $721.00 for the plaintiff, and that the land named in the bill was subject to the debt; and a decree was entered accordingly. Defendant in the bill made a motion for a new trial, on the following grounds :

(1.) Because the verdict of the jury was contrary to the evidence.

(2.) Because the verdict of the jury is contrary to the evidence as to the amount of money invested in land by the defendant—that is, money claimed by the plaintiff.

(3.) Because the verdict of the jury is contrary to law, in that it found that the entire amount claimed by complainant was a lien upon the land of defendant, described in complainant's bill, without regard to the amount of money which defendant had invested in this land; both the bill of complainant and the evidence showing th it defendant had not invested the entire amount claimed by complainant in the land described in complainant's bill.

(4.) Because the court erred in charging the jury, that "whatever amount of money you may find to be so due by the defendant to the complainant, on account of his having used her money and property, you may find the means of enforcing her rights, you may find the debt to be on the land described in the bill, and you may further find that the land be sold and the amounts paid to the complainant, and you may fix a time in which it shall be paid by the defendant to the complainant before a sale can be forced. You have to find such a verdict as to the mode of securing her rights as is equitable."

(5.) Because the court erred in charging the jury, that " if you find from the evidence that the complainant did not give the money and the note to the defendant, then the defendant is liable for her separate estate—whatever amount came into his hands and was consumed by him."

(6.) Because the court erred in charging the jury, that if the defendant came into possession of any money or property which belongs to the complainant, and under the usual confidence existing between husband and wife, was allowed to manage it for her, and it was not given to him, then the defendant is liable to the complainant for all such moneys or property which so went into his hands; and it is not necessary for complainant to prove that the

money or property was loaned to the defendant or that he promised to pay it back or account for it.

(7.) Because the court erred in charging the jury that, whenever the question arises as to the passing of property from the wife to the husband, it must be closely scrutinized, if the husband claims it as a gift to him, and it must clearly appear that it was a free and voluntary gift by the wife to the husband; and if the evidence does not clearly establish that the same was a gift, then the husband is liable to the wife for all such property as went into his hands and was used by him.

(8.) Because the court erred in overruling the demurrer filed by defendant to complainant's bill, which demurrer is a part of the record in this case, and to which reference is made.

(9.) Because the court, having overruled defendant's demurrer, refused to allow defendant to file an answer in said case unless he first paid up all the cost which had accrued in said case.

(10.) Because the court erred in striking out certain parts of defendant's answer, as above stated.

(11.) Because the court erred in admitting parol evidence as to the contents of the note of Drayt Douglass, under the facts as set out in the brief of evidence; defendant objecting that the note is the highest and best evidence, as the parties disagreed as to the amount of said note; it being shown that the note had been placed by complainant in defendant's hands, and that he had collected it; the court presuming that the note was cancelled and destroyed.

(12.) Because the court erred in refusing to strike from complainant's bill, on motion of defendant made before the case was submitted to the jury, the allegations as to certain offers of compromise and settlement made to the defendant by the complainant prior to the filing of her said bill, and in permitting H. C. Sheffield to testify to the same, as appears in the brief of evidence, over the objec-

tions of defendant that the same were irrelevant and only calculated to prejudice the mind of the jury against the defendant. The court held that demands by complainant on defendant for what she claimed to be equity, and offers on her part to do equity, were proper to be alleged and proved.

The motion was overruled, and defendant excepted.

1. The 3d, 4th, 5th, 6th and 8th grounds of this motion deny the jurisdiction of a court of equity to hold a husband to account for the use of the money of the wife, to follow the fund thus used into the property in which it has been invested and to enforce a lien on such property. We held in *Maddox vs. Oxford,* 70 *Ga.,* 179, that a husband could not use his wife's separate money to pay his own debts, and if his creditor knowingly received her separate funds for her husband's debt, she could recover the amount paid. If the fund had been invested in realty by the husband's creditor, the husband being insolvent, the land was subject to her claim, and she could enforce a lien thereon in a court of equity. This is a case between husband and wife; the rights of no third person have intervened; there is less difficulty, therefore, in applying the principle than there was in the case cited.

2. That gifts from the wife to the husband are to be scrutinized "with great jealousy," and upon "the slightest evidence of persuasion or influence" are to be declared void, at the instance of the donor or his representatives, if application be made in proper time, would be evident from §§2666, 3177, 3173 of the Code, when read in connection, even if the precise point had not been already decided, as was done in *Cain vs. Ligon, adm'r,* 71 *Ga.,* 692, and as was previously done where there was a similar relation (that of parent and child), in *Causey vs. Wiley, Banks & Co.,* 27 *Ga.,* 444, 451 *et seq.* The judge did not err, therefore, in the charge excepted to in the 7th ground of the motion for a new trial.

3. The defendant had, at the first term of the court, filed

a demurrer to the bill, which at a subsequent term was heard and overruled. When he went to trial, finding that he could not get along without it, he asked and obtained leave, at the close of the testimony on both sides, to file an answer, the court required him to pay costs, and to this requirement he excepted. Such matters of practice, and especially the opening of defaults, are largely in the discretion of the court. Code, §4194; 49 *Ga.*, 179. The terms imposed in this case were in strict accordance with the power given by law. Code, §3482; 31 *Ga.*, 335.

4. Nor was there any error in striking the portion of the answer sought to be converted into a cross-bill, and to which defendant excepted in the 10th ground of his motion. The matter set up was foreign to the issues made by the bill; not being germane to such issues, it should have been stricken. " A cross-bill," says Lumpkin, J , " must be confined to the subject-matter of the original bill. An entire departure from it is not allowable." 13 *Ga.*, 478, 482. What had the custody by the wife of the infant child of these parties, the enforcement of her return to his home, and the staying of her proceeding for alimony, to do with the settlement of the accounts between her and her husband, or her right to trace her money into the land he had purchased with it, and in consequence thereof to fix a lien upon it?

5. There was no error in admitting the testimony to which objection was taken, as set forth in the 11th ground of the motion. The testimony admitted did not go into the contents of the writing in question; it had relation only to the amount of money collected by the defendant on a certain note belonging to the plaintiff, and in this view of the matter it was competent. 1 Greenleaf Ev . §39, and citations in note (c) there.

6. Nor did the court err in allowing the complainant's solicitor to show that demands were made on the defendant for a settlement of the matters in controversy and his refusal to comply with such demands. This is a different

matter from admitting in evidence negotiations for a compromise. 59 *Ga.*, 343; 13 *Id.*, 406 (4th head-note), 414, 415; 16 *Id.*, 27, 30; 64 *Id.*, 170, 172.

7. The only remaining ground is that the verdict is contrary to the evidence. It is insisted that the aggregate amount found by the verdict is too large; and that only a portion of this amount was shown to have gone into the land in controversy, and to have constituted a special lien thereon in equity. While we are satisfied that this last complaint is well founded, and that not more than $352 of the $721.85 found to be due went into the land, we are of opinion that the finding of the entire amount was not unwarranted by the complainant's evidence. If the jury believed her account of the matter, they might have found for her a still larger sum than that they returned in her favor, yet we are satisfied that the error in the amount for which the special lien was given as between the parties is immaterial. The decree binds all the property of the defendant from its date, including this land, so that it does not concern him whether the lien be general or special. If there are outstanding liens against this property, then the special lien would become a question between the holders of such outstanding liens and the complainant. In that event, the amount of the special lien would become important.

We are inclined to the opinion that the jury, in their finding, must have given the defendant credit for most of the disputed items in the complainant's account, including an item of $50, which she earned by her needle during hours of leisure at night after she had performed all of her day's duties. This was, seemingly, not allowed, doubtless upon the idea that such earnings constituted no part of her separate estate, but belonged to her husband. To this view we are not prepared to yield an undoubting assent. We cannot say that she must be living separate from her husband to entitle her to such acquisitions, even under section 1756 of the Code. The acquisitions therein em-

braced, we are inclined to think, are such as are made during the time she should devote to the care, maintenance and support of the family, and not to what she makes during hours of leisure after she has performed her full duties in this respect. How far such acquisitions are to be regarded in the nature of pin money, and how far this view is strengthened by the terms of what is commonly known as the woman's law, by which all property " acquired " by her during the coverture shall remain her separate property (Code, §§5087, 1754), is well worthy of consideration.

These remarks are made out of abundant caution, because we do not wish to be considered as committed even by implication to a contrary view.

Judgment affirmed.