FRANCES L. LEDYARD, as Administratrix, etc., Appellant, *v.* WILLIAM L. BULL et al., as Executors, etc., Respondents.

Where all the parties interested in an intestate's estate are of full age, and one of them, with the assent of the others, undertakes to administer upon the estate without the issuing of letters of administration, settles all claims against the estate, states an account and distributes the balance so shown to be on hand for distribution, and each of the other parties interested takes his or her share, the settlement is, so far as it goes, binding, and no one of them can thereafter claim, through a formal administration, a new distribution; and this is so, in the absence of any claim of fraud or mistake, although it appears that the party making the distribution credited himself in the account with the amount of an

indebtedness of the intestate to him, which was not questioned by the others.

*It seems,* however, where the party making the distribution is legally chargeable with interest on any item of the account, and the same is not included in the account, the settlement and acceptance of their distributive share does not, in the absence of a release, bar the other next of kin from claiming and recovering a proportionate share of the interest.

*It seems,* while as a general rule an administrator may not retain from money in his hands the amount of a debt due him from the intestate, until it has been legally established and allowed, he may do so if all the persons interested in the estate assent thereto.

It appeared, in such a case, that the item upon which interest was claimed, was an item in a running account representing the intestate's share in a business not then closed; that the amount was not definitely determined at the time of the entry, but was entered subject to modification upon a subsequent collection of the assets and closing up of the business; and that the decedent's share was left in the hands of his son, the party who made the distribution, as a deposit, he drawing upon it from time to time during his life as he required money. *Held,* that the item did not draw interest until demand, and in the absence of proof of a demand, interest was not chargeable; also that, conceding the rule to be otherwise, the facts justified an inference that it was the understanding of the parties that no interest should be charged.

In the absence of creditors, an administrator is a mere trustee for the next of kin, charged with the sole duty to collect, convert and distribute the estate.

Where, therefore, the whole estate has been legally and justly distributed, there is no trust duty to be performed and no need of a trustee.

(Argued December 13, 1889; decided January 14, 1890.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made November 23, 1888, which affirmed a judgment in favor of defendants entered upon the report of a referee.

This was an action for an accounting.

Asa Worthington, plaintiff's intestate, died November 25, 1875, leaving four daughters and a son, his only children and next of kin. The plaintiff, one of the daughters, was appointed administratrix December 19, 1884. Henry R. Worthington, the son, died December 17, 1880, leaving a will in which the defendants were named as executors.

The cause of action stated in the complaint is that Asa Worthington and his son, Henry R. Worthington, were associated in business as copartners under the name of Henry R. Worthington & Co. ; that on December 31, 1860, Asa Worthington being about to retire, an account of the assets and liabilities were taken and a balance struck, on which there was found " due and owing " to Asa Worthington from the partnership assets $75,000, which sum Henry R. Worthington agreed to pay, and Asa Worthington agreed to accept as his share of the capital and profits in the business up to the date of the alleged settlement. The complaint further states that on December 31, 1860, there appeared upon the books of. H. R. Worthington & Co., to the credit of Asa Worthington, the sum of $41,539.38, transferred from the account of one Anthony Worthington, against which Asa Worthington had drawn $39,119.17, leaving a balance on the books to the credit of Asa Worthington on December 31, 1860, of $2,420.20, which sum Henry R. Worthington also agreed to pay; that the sums were not then paid to Asa Worthington, but were by him loaned to Henry R. Worthington, who used the same in his business. The complaint further states for a separate cause of action, that at various times between 1862 and 1876 Henry R. Worthington received from various sources to the use of Asa Worthington $4,806.04, which sum Henry R. Worthington retained and used in his business. The defendants in their answer denied all the material allegations of the complaint, and set up as a defense to each cause of action the statute of limitations.

The action was referred, and upon the trial before the referee it appeared that prior to 1860 Asa Worthington and his son had some connection in business, and had had for many years; that on the 24th day of June, 1861, the father wrote a letter addressed to his son, from which the following is an extract:

"Being about to give up my agency in your affairs and retire from active business ; and having at the close of the 1860 carefully adjusted the acc'ts in Ledger E, I desire in order

to a right understanding of them by those who come after me to make the following explanations :

" These acc'ts principally relate to the business you are now engaged in. They commenced in my private or individual books and have so continued to the present time. They therefore appear (so far as you are concerned) as kept by an agent who is to account to you for all receipts on your acc't after deducting all the expenditures & advances made or paid by him, & this is the manner in which they have been yearly stated to you & your former partner Wm. H. Becker:

"I will state these acc'ts in two ways.

" First—as they will appear if rendered by myself as an agent for you & Secondly—as they will stand if the books in which they are kept, be (as they now will be) considered as your own."

The writer then states the accounts in the two ways, and shows that, whether he should be regarded as agent or as interested in the business to the extent of one-third, he ought to have for his services $75,000. This result he reached by stating an account of all the assets and business which he and his son had carried on. Some of the assets were not converted, and accounts to a large amount were outstanding and to be collected.

The letter then continues as follows :

" You have agreed to allow me for my services or agency up to 31st Dec'r 1860 & thence forward while I am able or willing to assist you, the sum of $75,000, being for services &c. since the year 1845, say 15 years. This sum I have carried to my credit in the Ledger & to the debit of H. R. W. & Co., or your profit & loss acc't.    *    *    *

" This deducted leaves a balance of $75,000, the amount you have agreed to allow me for services rendered. This sum of $75,000, is all I have asked or felt entitled to demand, and you have freely and unhesitatingly allowed it.

" It is now, however, involved in the assets of your business and I do not consider that it is at present due and payable to me.

" Our fortunes and business have been linked together up to the present time without any agreement or understanding between us of our relative interests. You have been involved by my imprudence in a large outlay of cash funds, resulting in your being compelled to take real estate, heavily incumbered, for your security.

" These incumbrances must be removed and much time consumed before you can realize from it. It would evidently be unjust for me or my heirs to demand payment of my claim before you have had reasonable time to realize from the assets out of which it arises. To your ingenuity and perseverance is mainly due this claim I hold against you and should your assets (now more doubtful than before the existence of our Country's difficulties) prove to be of less value or yield less than was contemplated when the accts were adjusted (31 Dec. 1860) it is but right that a due proportion of such loss or depreciation be deducted from my claim. Altho' our minds have never met until now upon the subject of my compensation, yet I have always supposed that $\frac{1}{3}$ (one-third) of the net profits of the concern would be a fair share for me, and this I shall always be content with (or its equivalent) on a final winding up of the business. I preferred to base my compensation on the principle of a salary rather than this interest in order to avoid the trouble of an adjustment at the termination of my connection with you.

" You have readily yielded to my desire in this respect, and now I think this settlement had best be adhered to. If the assets you hold should prove worthless for instance, I should have no claim upon you, and so, in proportion to their depreciation, I must bear a proportionate rate of the loss, charging me with the same until my share of the net profits, or my compensation rather, be no more than one-third of your net profits. And this adjustment, in case of my absence, I must and do confidently cheerfully leave with you. * * *

" The one-third of this (if this be my interest) is $75,187.03, so that the sum of $75,000, now passed to my credit, appears to be near enough to the right one under present appear-

ances, but time will determine whether these estimates are correct, and I must be debited or credited with the difference as the case may be.

"I do not desire to split hairs with you or to have you go into nice calculations.

"It will be easy enough, by referring to these statements, to determine about the just amo. due me at any time the acct is settled.

"When I am taken away, which must now soon happen, it is my wish and desire, and I here so will and decree that whatever is left to me of worldly goods shall, after paying my just and legal debts, be divided equally between my five children, or to their heirs.  *    *    *

"And I sincerely hope, and it is this belief that cheers me when I contemplate my approaching end, that my children will always continue to feel one common interest in each other's welfare, and that no hard feelings will be entertained or reflections cast to chill my grave that I have not done equal justice to all and loved all with equal affection.

"I am not aware at this time, of owing any one any considerable amount except Maria, so long my faithful housekeeper and your youthful protector and guide.  Towards her you know my feelings and obligations.  I owe for her unexampled and faithful services for a long series of years.  She keeps the acct., altho' I have somewhere a copy of it, but it matters not, whatever she claims she is justly entitled to, and I desire it may be paid to the uttermost farthing, whatever happens and while she lives, let her want for nothing that money, care or kindness can yield.  You know her and have experienced her care and kindness.  I need say no more. This last request is addressed to all my dear children."

It further appeared that about March 10, 1876, Henry R. Worthington called his sisters to his office, and there presented and read to them portions of the letter written to him by his father, and either stated or professed to read from the letter that interest on the account had been "waived."  At the same time he presented an account endorsed, "Statement of

account of Asa Worthington, from books of H. R. Worthington, 1860 to 1875 inclusive." On the credit side of the account was an item of $75,000, under date of December 31, 1860, and fourteen other items in different years, all the credits aggregating $121,345.42.

On the debtor side there was a charge under date of January 1, 1860, of $34,721.84, and charges in each year for money had by Asa Worthington from and including the year 1860 to his death, aggregating $62,127.80, and the account thus far showed a balance of credit to Asa Worthington of $24,495.78. The account also contained certain charges against his estate after his death in 1875 and 1876, amounting to $1,089.50, and after deducting that sum from the first balance there remained a credit balance of $23,406.28. From this sum he then deducted $11,000 for rent of the house occupied by his father for eleven years, and the further sum of $6,465.13 due to Maria Fraser, the housekeeper spoken of in the letter, and there was thus left due from Henry R. Worth, inton to his father's estate the sum of $5,941.15.

He subsequently paid the amount due Maria Fraser, and without administration upon his father's estate, paid to his sisters their respective shares in the final balance.

The referee refused to allow the plaintiff any interest upon the credit items in the account, and found that Henry R. Worthington had accounted for and paid the balance due from him to his father's estate to those entitled to the same, and he dismissed the complaint.

Further facts are stated in the opinion.

*Isaac U. Miller* for appellant. Plaintiff's uncontroverted evidence showed that on December 31, 1860, there was an agreed balance of $77,420.21 in the hands of Henry R. Worthington belonging to Asa Worthington; for this he was obliged to account. (1 Story's Eq. Juris., § 526; *Lockwood* v. *Thorne*, 11 N. Y. 70; *Ogden* v. *Astor*, 4 Sandf. 311; *Lloyd* v. *Carrier*, 2 Lans. 364; *Wiltzie* v. *Adamson*, 1 Phil. 357; *Alderson* v. *Clay*, 1 Starkie, 405; *Mackintosh*

v. *Marshall,* 11 M. & W. 116; 1 Greenl. on Evidence, §198; *Prickell* v. *Hulse,* 7 A. & E. 457; *Champion* v. *Joslyn,* 44 N. Y. 653; *Lockwood* v. *Thorne,* 18 id. 286; *Tucker* v. *Stevens,* 2 Hun. 424; *Ross* v. *Ross,* 6 id. 80; *Morrow* v. *Morrow,* 12 id. 386; *William* v. *Sargeant,* 46 N. Y. 481.) Interest attaches as a matter of law. (*McMahon* v. *N. Y. & E. R. R. Co.,* 20 N. Y. 463; *Little* v. *Banks,* 85 id. 267; *Winch* v. *Ice Co.,* 86 id. 618; *Reese* v. *Rutherford,* 90 id. 644; *Van Rensselaer* v. *Jewett,* 2 id. 135; *Dana* v. *Fiedler,* 12 N. Y. 40; *Martin* v. *Stilliman,* 53 id. 615; *White* v. *Miller,* 78 id. 395; *Gilbert* v. *Van Rensselaer,* 15 id. 399; *Guggenheimer* v. *Geiszler,* 81 id. 243; *Purdy* v. *Phillips,* 11 id. 406; *Brennan* v. *S. L. Ins. Co.,* 4 Daly 296.) The claim is not barred by the statute of limitations. (*Worthington* v. *Crounditch,* 7 Q. B. 479; *White* v. *Smith,* 46 N. Y. 418; Abbott's Tr. Brief, 67, § 7; *Murray* v. *Coster,* 5 Johns. Ch. 522; 20 Johns. 576; Angell on Limitations, §§ 244, 246; *Read* v. *Hurst,* 7 Wend. 408; *Peck* v. *N. Y. S. Co.,* 5 Bosw. 226; *Dyer* v. *Walker,* 54 Me. 18; *Ramsay* v. *Warner,* 97 Mass. 8; *Shoemaker* v. *Benedict,* 11 N. Y. 189; Wood on Limitations, 234, 235; *Baildon* v. *Walton,* 1 Exch. 617; *Davis* v. *Garr,* 6 N. Y. 124; *Randall* v. *Wilkins,* 4 Denio, 579; *Benjamin* v. *DeGroat,* 1 id. 151; Wood on Lim. 254; *Sandford* v. *Sandford,* 62 N. Y. 555.) The ruling that defendants need account for only about $6,000 was error. (*Gratton* v. *Net Life Ins. Co.,* 92 N. Y. 284; *Gildersleeve* v. *Landon,* 73 id. 609; *Delamater* v. *Pierce,* 3 Dem. 315; Taller on Exs. 365, 366; 1 Chitty on Gen. Pr. 535; Schoulder on Ex. & Ad. 120; *Carter* v. *Greenwood,* 5 Jones Ex. 410; *Weeks* v. *Jewett,* 45 N. H. 540; Redfield on Surrogates, 439; Comyn's Digest, 500, 501, 503; *Campbell* v. *Tousey,* 7 Cow. 64; *In re Flandau,* 28 Hun. 279; *Muir* v. *Trustees, etc.,* 3 Barb. Ch. 477; *Brown* v. *Brown,* 1 Barb. 376; *Fay* v. *Fay,* 9 Cent. Rep. 483; *Scott* v. *Montells,* 109 N. Y 1.) Defendants by cross-examination laid the foundation for offering in evidence certain marks in lead pencil claimed to have been made on the account by H. R. Worthington, but

did not do so. Plaintiff has a right to object to their admission had they been offered. (*Rouse* v. *Whited*, 25 N. Y. 170; 1 Greenl. on Ev. 263; *Waldele* v. *R. R. Co.*, 95 N. Y. 274; *Platner* v. *Platner*, 77 id. 103.) It was plaintiff's duty to collect the estate and the question as to the creditors was not at issue and could not be raised by defendants. *Edwards* v. *Hoopes*, 2 Wheat. 426; *Patchen* v. *Wilson*, 4 Hill, 57; *Woodin* v. *Bagley*, 13 Wend. 153; *Beecher* v. *Crouse*, 19 id. 306.) The referee erred in refusing the request to find as a matter of fact that there was a waiver of interest. (*Somer* v. *Meeks*, 25 Nel. 361; *White* v. *Stillman*, id. 541.)

*William Allen Butler* and *W. A. Jenner* for respondent. There is no evidence that Henry R. Worthington ever assented to or approved the "Copy-book letter." (*Phelan* v. *N. Y. Ins. Co.*, 113 N. Y. 147.) Plaintiff having put the account in evidence is bound by all its contents and the oral declarations of Henry R. made at the same time. (*Randle* v. *Blackburn*, 5 Taunt. 245; *Biglow* v. *Sanders*, 22 Barb. 147; *Dewey* v. *Hotchkiss*, 30 N. Y. 497; *Smith* v. *Jones*, 15 Johns. 229; *Rouse* v. *Whited*, 25 N. Y. 170; *Platner* v. *Platner*, 78 id. 103; *Grattan* v. *Metropolitan*, 92 id. 284; *Wotherspoon* v. *Metropolitan*, 17 J. & S. 152; 3 How. Pr. 132; *Pendleton* v. *Weed*, 17 N. Y. 72; *Low* v. *Payne*, 4 id. 247, 248; *Warrington* v. *Early*, 2 El. & Bl. 764; *Dewey* v. *Reed*, 40 Barb. 16.) Where a party wishes to avail of an admission or averment contained in a pleading, he must accept the admission or averment as an entirety; he cannot accept a portion and reject the remainder. (Starkie on Ev. 444; Greenl. on Ev., § 202; *Gildersleeve* v. *De La Vergne*, 10 Hun, 537; *Albro* v. *Figuera*, 60 N. Y. 630; *Gildersleeve* v. *Landon*, 73 id. 609; *Mott* v. *C. I. Co.*, Id. 543, 550; *Gildersleeve* v. *Mahoney*, 5 Duer, 383; *Bowen* v. *Powell*, 1 Lans. 1; *Green* v. *Givan*, 33 N. Y. 343, 367; *Strong* v. *Dwight*, 11 Abb. [N. S.] 319; *Fash* v. *T. A. R. R. Co.*, 1 Daly, 148.) Interest runs only where the amount of a claim is ascertained and liquidated. There must be an express agreement to pay interest or an implied agree-

ment from custom or the special circumstances of the case. None of these grounds exist here.    (*Reed* v. *R. G. Factory,* 3 Cow. 387; *Parsall* v. *Fry,* 19 Hun, 595; *Smith* v. *Viele,* 60 N. Y. 106, 111; *Crosby* v. *Mason,* 32 Conn. 482; *Lloyd* v. *Carrier,* 2 Lans. 364; *Beach* v. *Colles,* 85 N. Y. 511.)    This action is not for deceit or fraud, or any tort whatever.    It is founded on an alleged express contract made in December, 1860, and the proof fails to show any such contract.    There is nothing on which to found a claim for any wrongful act. (*Carr* v. *Thompson,* 87 N. Y. 160.)    That heirs at law and next of kin are competent to make an agreement for distribution, if creditors do not object, and that when executed such an agreement will not be disturbed, is abundantly supported by authority.    (*Walworth* v. *Abel,* 52 Penn. St. 370; *Weaver* v. *Roth,* 105 id. 408; *Babbitt* v. *Bowen,* 32 Vt. 437; *Josey* v. *Rogers,* 13 Ga. 478; 3 Redf. on Wills, [3d ed.] 89; *Moore* v. *Gordon,* 24 Ia. 158; *Nickerson* v. *Bowley,* 8 Metc. 424; *Danners* v. *Dewes,* 3 P. Wms. 40 *n.; Hayward* v. *Hayward,* 20 Pick. 517; *Kingsbury* v. *Scovill,* 26 Conn. 349; *Foster* v. *Fifield,* 20 Pick. 67; *Adams* v. *Adams,* 10 Metc. 170; *Fretwell* v. *McLemore,* 52 Ala. 124; *Byrd* v. *Byrd,* 44 Ga. 258; *Ricks* v. *Hilliard,* 45 Miss. 359; ' *Vroom* v. *Van Horne,* 10 Paige, 549; *Priest* v. *Watkins,* 2 Hill, 225; *In re Faulkner,* 7 id. 182; *Ingram* v. *Young,* 3 T. & C. 491; *Allen* v. *Eighmie,* 9 Hun, 201; *Smith* v. *Robinson,* 30 id. 602; *Thomas* v. *N. Y. L. Ins. Co.,* 18 J. & S. 225.)    There is no statute forbidding Worthington reserving his one-fifth.    (2 R. S. [6th ed.] 81, § 60; Id. 4449, § 17; 3 id. 88, 733.)

EARL, J.  After the death of his father, Henry R. Worthington undertook, with the assent of his sisters, the only next of kin, to administer upon his estate.  He stated an account and distributed the balance, and each of his sisters took and had her share.  Although all this was done without letters of administration upon his father's estate, so far as it went, it was binding upon the next of kin.  They were the persons beneficially interested in the estate, and they could not take their

respective shares in the estate and then through administration claim and obtain a new distribution and thus duplicate their shares. (3 Redf. on Wills [3d ed.] 89; *Josey* v. *Rogers*, 13 Ga. 478; *Byrd* v. *Byrd*, 44 id. 258; *Babbitt* v. *Bowen*, 32 Vt. 437; *Walworth* v.*Abel*, 52 Penn. St. 370; *Weaver* v. *Roth*, 105 id. 408; *Fretwell* v. *McLemore*, 52 Ala. 124; *Ricks* v. *Hilliard*, 45 Miss. 359.) In the absence of creditors, an administrator is a mere trustee for the next of kin, charged with the sole duty to collect, convert and distribute the estate among the beneficiaries according to their respective interests. But where the whole trust estate has already been legally and justly distributed, and the purposes of the law thus accomplished, there is no trust duty to be performed and no need of a trustee.

There is no dispute that Henry R. Worthington, discharged a valid debt of his father by the payment he made to or on account of Maria Fraser, his father's housekeeper, and the propriety of that payment is in no way challenged; nor is there any dispute that he made proper distribution among the next of kin of the final balance due from him of about $6,000. At the time of the settlement with his sisters he claimed $11,000, due him from his father for rent, and they assented to it. While an administrator cannot retain from money in his hands the amount of a debt due him from his intestate until it has been legally established and allowed, yet he may do it if all the persons interested in the estate assent thereto. In that event he need not make formal proof of his claim, but the assent takes the place and answers the purposes of proof. Here the sole parties interested in the estate undertook to settle up and divide the estate without administration, and this claim was made, assented to and deducted and the balance distributed. The children of the intestate must have known whether he occupied a house of his son under such circumstances as to make a claim for rent just and proper; and for ten years after the settlement, and for four years after the death of the son, it does not appear that any one raised any question about the propriety of the claim or its allowance. It was,

however, open to the plaintiff upon the trial of this action to show that there was some fraud or mistake as to this claim. But she gave no evidence whatever impeaching it, and the settlement and distribution then made must, therefore, stand and bar this action unless interest upon some one or more of the credit items of the account was due from the son to the estate of his father. The main contention at the trial and since has been over the interest, and unless the plaintiff is entitled to recover some interest the judgment below is right and must be affirmed.

The referee held that the statute of limitations did not furnish any defense and, therefore, we need not give that defense any consideration, nor determine whether or not the referee's decision in reference thereto was right.

If Henry R. Worthington was legally bound to pay interest, we do not think that the settlement made in March, 1876, bars the plaintiff from its recovery. If he owed the interest, he has never paid it, and the next of kin never released him from its payment, and his estate, assuming that the claim is not barred by the lapse of time, is still bound to pay it.

We then come to the important question, was Henry R. Worthington legally liable to pay interest on any of the items on the credit side of the account found in his books and rendered by him to his sisters?

As to the interest, we have no material evidence outside of the letter addressed by the father to his son, and the account rendered from his books by the son. The evidence as to the precise relations between them is very meager, and we have no evidence whatever of their dealings, relations or transactions with each other from 1860 to the death of the father in 1875, a period of fifteen years, except what is furnished by the account; and all that shows is the credit items upon one side of the account, and debit items upon the other side for moneys had by the father.

We must assume that the son received the letter written by his father at about its date. He produced it after his father's death, and acted upon it. The credit of the $75,000 was

entered in the books of his business and he must have been cognizant of the entries in those books. Those entries are intelligible only by a reference to the letter. He made no claim that it had then recently come into his possession or that he had not assented to the statements therein made. The declarations therein contained are at least binding upon the plaintiff as the representative of the writer.

We will confine our attention to the $75,000, because if that item did not draw interest it would be easy to show that none of the others did. That was a sum agreed upon for the value of the father's services for many years, or for his share of the profits of the business carried on by him and his son.

Interest is payable for the loan or retention of money by express contract, or as damages for non-payment of money due. Here there was no contract to pay interest; and hence, no interest could be claimed upon the $75,000, unless that amount became due and payable, and the son was in some way in default for not paying. The general rule is, that in the absence of an agreement to pay interest, it is implied by law as damages for not discharging a debt when it ought to be paid. The important practical inquiry, therefore, in each case in which interest is in question is, what is the date at which this legal duty to pay as an absolute present duty arose? In the case of a running account it is not sufficient that the account is capable of accurate statement or of liquidation from the facts which it contains, or that its payment may be presently enforced. Interest is refused upon such accounts more upon the ground that there is a running credit, than because the demand is uncertain and actually unliquidated. (1 Sutherland on Damages, 582, 596, 615.) Money payable on demand does not draw interest until after demand, and so, money desposited with a depositary, does not draw interest until after demand. These general rules of law might be more fully stated, but they are sufficient for the present purposes.

Now what are the facts to which these rules of law must be applied? The father did not take from his son any obligation

for the payment of the $75,000, and there is no hint in the letter that he expected any interest thereon. He simply entered it as a credit in the books of his son's business. There he left it for nearly fifteen years without exacting any interest and without giving himself credit or asking that he should have credit in the account for interest. Other credits were given him in the same account, and he was annually charged therein with moneys had by him. If there had been any understanding that he was to have interest, would there not have been some mention of a matter of such importance, or would not the interest have been credited against the moneys had? If there had been between father and son a simple adjustment of the claims of the father at the sum of $75,000, and nothing more, that amount would have been presently due and would have drawn interest. But here the father entered this sum as an item of account, giving his son credit therefor in his books, thus leaving it fairly to be inferred that it was not presently to be paid, and that the son must have some forbearance at least. But this is not all. The sum of $75,000 was not definitely fixed as the sum absolutely to be paid by the son. It was merely tentative. It was based upon statements which might or might not prove accurate. In the letter he said: "The sum of $75,000 now passed to my credit appears to be near enough, but time will determine whether these estimates are correct, and I must be debited or credited with the difference, as the case may be.   *   *   * It will be easy enough, by referring to these statements, to determine *about* the just amount due me at any time the account is settled." It thus appears that a further settlement or adjustment at some indefinite future time was contemplated. The son did not have the $75,000 in money or in assets readily convertible into money, and hence the father said that he did not consider that it was "at present due and payable" to him. He stated that the son had been involved by his imprudence and compelled to take real estate heavily incumbered for his security; that it would take much time before the son could realize from the real estate and that it would be evidently

unjust for him or his heirs to demand payment of his claim until his son had had a reasonable time to realize from the assets out of which it arose. If the son's assets did not turn out as estimated, there was to be a corresponding deduction from the sum of $75,000, and the final adjustment in case of his decease, he said: "I must and do confidently cheerfully leave with you."

In the face of these statements and others contained in the letter, how can it be said that any sum was absolutely established as payable to the father? Clearly the $75,000 was not presently payable. The son was not at once in default for not paying it. The father could not have sued him for it without a demand, and could not have recovered it without some proof that it had become payable according to the terms of the settlement as contained in the letter. How much was a reasonable time to realize upon the son's assets? There is no proof showing this, and it may have taken many years. If the $75,000 never became absolutely payable in the life-time of the father, when did it become payable? In the absence of any proof whatever — in the absence of any demand, how is it possible to fix any definite time from which interest would have to be computed? The father evidently treated his son as the depositary of the money due him, and he drew upon his deposit from time to time as he needed money for the support of himself and family, and in this view the sum could not draw interest until demanded. There was, we think, absolutely no basis for the allowance of interest. But if we are wrong in this, yet, we think, upon the facts, the referee could justly draw the inference that it was the understanding of the parties that the sum should not draw interest.

It may be said with much force that it is improbable that the father supposed that he was living upon and using up his principal when the interest would have been ample to support him. Evidence as to the relations and transactions between the father and son during the fifteen years after the settlement might clear up the mystery. But, at the time the letter was written, it is evident that the father did not expect

to live long, and for some reason not explained by the meagre evidence nothing was done to set the interest running.

We do not feel certain that in the denial of all interest absolute justice is done to the next of kin. But this action was not commenced until more than twenty-four years after the settlement, nearly ten years after the death of Asa, and nearly five years after the death of Henry R. Worthington, and the great lapse of time has probably rendered it difficult, if not impossible, to furnish a legal basis by evidence, if it ever existed, for the allowance of interest.

Our conclusion, therefore, is that the judgment should be affirmed with costs.

All concur, except Ruger, Ch. J., and Peckham, J. dissenting.

Judgment affirmed.