JESSIE CHASE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 35942.   Promulgated May 21, 1930.

*Ellwood Colahan, Esq.*, for the petitioner.
*J. Kiley, Esq.*, for the respondent.

SMITH: The question presented is whether the petitioner is liable to income tax upon amounts received by her representing interest upon arrearage of salary owed to George Chase, her brother, who died January 8, 1924. The petitioner claims that the amounts received represented gratuities to her by the New York Law School and that such gratuities were not taxable income. The respondent, on the other hand, contends that the amounts received were interest upon an obligation owed to her brother, which interest she received as residuary legatee.

In any event we are of the opinion that the respondent is in error in including the total amount of the interest payments as taxable income of the petitioner. If it be assumed that the New York Law School was obligated to pay interest upon the arrearages of salary to George Chase, the interest which had accrued up to the date of his death constituted a part of his gross estate subject to estate tax and the receipt thereof by the petitioner was not taxable income. *William K. Vanderbilt, Executor*, 11 B. T. A. 291. But we are of the opinion that the petitioner is not liable to income tax in respect of any portion of the amounts received from the New York Law School. The facts adduced show conclusively that the payment in question was a gift by the New York Law School. Not only did no consideration move from Jessie Chase to the New York Law School, but none moved from George Chase, himself. Had the payment been made directly to the latter it would still be a gift. *John H. Rosseter*, 12 B. T. A. 254; affd., *Blair* v. *Rosseter*, 33 Fed. (2d) 286. The debt owed by the New York Law School to Dean Chase was not a fixed obligation payable at a definite time or at all events. It was only payable if and when, and provided the debtor ultimately obtained funds with which to make payment. The debt was not due unless and until funds were earned with which to repay it. There was no agreement or demand to pay interest expressed or implied. Even if the waivers by Dean Chase expressed in the meeting of the board of directors on August 13, 1918, were completely disregarded, no interest accrued as a matter of law in the instant transaction. Interest does not run on indefinite, conditional or unmatured obligations, or, even on such definite ones as money payable on demand, unless there is an express agreement to pay interest. *Ledyard* v. *Bull*, 119 N. Y. 62; *Totten* v. *Totten*, 294 Ill. 70.

In the *Ledyard* case, at pages 74–75, the New York Court of Appeals, in pointing out that interest is not implied until a loan is unequivocally payable, said:

\* \* \* The important practical inquiry, therefore, in each case in which interest is in question is, what is the date at which this legal duty to pay as an

absolute present duty arose? * * * Money payable on demand does not draw interest until after demand, and so, money deposited with a depositary, does not draw interest until after demand. * * * If there had been any understanding that he was to have interest, would there not have been some mention of a matter of such importance, or would not the interest have been credited against the moneys had? * * *

Similarly, in the *Totten* case, it was said:

> * * * In the absence of an agreement for a loan with interest the statute of this state does not apply and require interest. It only provides for the payment of interest after the account becomes due. * * * It is a fair inference from the evidence that this loan was not intended to be paid until Harry could sell the property, and therefore it would not become due until the proper time had arrived for the sale of the property. The property has not been sold, and there was no demand for the payment of the loan before the beginning of this litigation.

In the instant case not only was the payment of interest never even contemplated, much less agreed upon, but there was an express and formal waiver of the debt itself. Furthermore, Jabish Holmes, the president of the New York Law School, affirmed in an affidavit admitted in evidence in the stipulation as being the equivalent of the sworn testimony of the affiant:

> Therefore, as a gratuity and rather as a gift in appreciation for their conduct, the trustees decided that inasmuch as we had the money and were able to do so, that it would show great lack of appreciation of our moral obligations if we did not give to these people, as a gift, a sum equal to this interest, and consequently the trustees continued the payment thereof until the full amount was paid.

Finally, there remains the vital point that the payment was made to Jessie Chase, the petitioner, rather than to the creditor or his estate. Jessie Chase had no privity or business relationship with the law school in any way. If anything could be needed to establish the voluntary nature of the transaction, it is this conclusive fact. Jessie Chase parted with no manner of consideration and the law school was under no obligation to her, legal or moral.

The case at bar is distinguishable at a glance from those rulings and decisions that have held bonuses and the like paid to employees in the regular course of business to be taxable income. Even there the trend of modern authority is to apply the common law rules of construction of gifts, to corporate transactions where additional payments are made to employees in recognition of valuable services performed. *Blair* v. *Rosseter, supra; C. D. Jones,* 10 B. T. A. 202; reversed by the Circuit Court of Appeals, *Jones* v. *Commissioner,* 31 Fed. (2d) 755. If in those cases a payment to a person then under employment and in consideration of his services could be held to be a gift, surely an amount paid to a third person where the debt was waived and where the idea of interest payable upon that debt had

never entered anyone's head, must likewise be held to be a gift. In *Blair* v. *Rosseter, supra,* the president of a commercial corporation who received a salary of $6,000 a year was voted a bonus of $50,000 in recognition of his able management and the successful operation of the company. The court fell back upon the long-accepted definition of a gift as a transfer "without any consideration or compensation therefor, 28 C. J. 620." The court took the view that:

If the agreement had remained executory, no court would enforce it; if the corporation was insolvent at the time, no court would refuse to set the transaction aside at the suit of a creditor or a trustee in bankruptcy, and, if the corporation had attempted to deduct the amount of the payment from its gross income for tax purposes, we have little doubt that the government could successfully contest its right to do so. It is said that the corporation paid no income tax for the year in question, but if that be true, it would in nowise change the nature of the transaction.

In another recent decision the Board has applied these principles to the payment of interest by a corporation to a stockholder on loans by the latter to the former. *Miller Safe Co.,* 12 B. T. A. 1388. The facts in that case, as far as they went, were surprisingly similar to those in the instant proceeding.

Upon the entire record we are of the opinion that the payments by the New York Law School to the petitioner involved herein constituted gifts and are not liable to income tax.

*Judgment will be entered under Rule 50.*