In the Matter of the Estate of GEORGE BLUMENTHAL, Deceased.
Surrogate's Court, New York County, July 12, 1948.

*Cook, Lehman, Goldmark & Loeb* and *Cleary, Gottlieb, Friendly & Cox* for Carl J. Schmidlapp and another, as executors of George Blumenthal, deceased, petitioners.

*Spence, Hotchkiss, Parker & Duryee* and *Eric Nightingale, James H. Halpin* and *Albert B. Dearden* for Andre Dezarrois, claimant, respondent.

Collins, S. By prior decision of this court (N. Y. L. J., April 8, 1947, p. 1359, col. 2) all issues were disposed of except a claim of a creditor. Hearings have been had on the claim and the matter has been submitted for final determination.

The claimant, Andre Dezarrois of Paris, France, founds his claim upon a written contract made with the deceased on September 6, 1932. From the evidence presented it appears that the deceased, George Blumenthal and his wife, Florence Blumenthal, in 1919, became associated with a small group of distinguished Americans in the creation and organization of the *Fondation Americaine Pour La Pensee et l'Art Francais.* The principal purpose of the organization, as set forth in its by-laws, was " to make closer, in the disinterested sphere of literature and art, the bonds which unite the American and French Nations." In furtherance of this laudable purpose, the founders, fourteen in number, each contributed 120,000 francs or a total of 1,680,000 francs. The funds were donated to the French State, the income to be used for the award of scholarships to worthy French students of the fine arts. The selection of the students was made by juries composed of French artists and men of letters prominent in the particular field to which the award was attached.

From 1919 to her death in 1930, Mrs. Blumenthal served as president of the organization. Mr. Blumenthal was president from 1930 to his death on June 26, 1941. The claimant was installed as secretary in 1919 and served as such until 1939 when upon the nomination of Mr. Blumenthal, he became secretary for life.

It also appears from the evidence that the claimant was held high in the esteem of both the deceased and his wife. The claimant testified that Mr. and Mrs. Blumenthal were the originators of the idea for a *Fondation* and the prime movers in its organization and thereafter in its continued existence and advancement. He worked closely with Mrs. Blumenthal first in formulating plans for the creation of the *Fondation* and later in its conduct and operation. After her death he acted in close co-operation with Mr. Blumenthal.

Mrs. Blumenthal left a will in which she bequeathed to the claimant an annuity " of the annual amount of Two Thousand Dollars ($2,000) as long as he is connected as an officer or as secretary with the *Fondation Americaine Pour La Pensee et l'Art Francais.*" Mr. Blumenthal, as executor of his wife's will, forwarded payments of the annuity to the claimant until

1932. In September of that year, he represented to the claimant that it would be of great convenience and assistance to him in settling his wife's estate if claimant would release and relinquish his right to the annuity under the will and accept in place thereof an agreement by Mr. Blumenthal to make like payments. The claimant accepted the suggestion and on September 6, 1932, the contract upon which the claim is based was executed.

The contract was signed by Mr. Blumenthal and recited that the claimant had delivered a release and renunciation of the annuity granted to him under Mrs. Blumenthal's will. It then provided that in consideration thereof Mr. Blumenthal agreed to pay to the claimant the sum of $2,000 each year." so long as he is connected as an officer or as secretary with the *Fondation Americaine Pour La Pensee et l'Art Francais* * * * hereby binding my personal representatives and my estate to make and continue such payments in the event of my death to the said Andre Dezarrois so long as he is connected as an officer or as secretary with the said *Fondation* * * *."

The deceased made regular payments to the claimant pursuant to the terms of the agreement until 1939. The last payment was made in September of that year. No payments were made thereafter.

The executors resist the allowance of the claim in this proceeding on several grounds. They allege that as a condition precedent to recovery here the claimant must show that the *Fondation* after 1939 had a real existence and that he performed substantial duties as its secretary. They contend that the *Fondation* subsequent to 1939 had no real existence, became a " mere shell " of its former self and that any services performed by the claimant were illusory and intended only to lend color to his claim under the contract.

The claimant answers that the contract did not call upon him to perform any services. It provided merely that he should be connected with the *Fondation* as an officer or as its secretary. He further argues that even accepting the executors' contention the proof shows that the *Fondation* has always had a real existence and that he has continued to perform substantial services, first as general secretary and then as general secretary for life.

On the issues thus created the evidence supports the claimant. By stipulation of the parties certain documents procured from the General Bureau of Arts and Letters of the Republic of France were received in evidence. These documents show that the 1,680,000 francs originally deposited with the French Govern-

ment by the fourteen founders has now increased to 1,920,480 francs. The income available for scholarships as of September 27, 1947, amounted to 199,831 francs. In 1946, the *Fondation* recommended nine French artists for scholarships. Of these, seven were paid 25,000 francs each and two received 12,500 francs each. The scholarships are awarded every two years. They are scheduled to be made and will be made this year. Because some scholarships were not awarded in 1946, an additional sum of 112,832 francs will be available for grants during the current year.

The claimant admits that the *Fondation's* activities were restricted during the war years. However, he introduced in evidence letters from Mr. Blumenthal in which the deceased recognized the difficulties caused by war conditions and gave the claimant " full power to act in the direction that you judge most useful." In other letters Mr. Blumenthal expressed his trust and confidence in the claimant and authorized him to make decisions " without consulting me again." The claimant testified that, acting on these instructions, he attended during the war years " to the proper functioning of the *Fondation.*" He " continued to meet or correspond with the members of the juries and the holders of the scholarship of the *Fondation* and also to prepare candidatures for after the war." The office of the *Fondation* remained open and was used by him " for the purpose of receiving the members of the juries and the scholarship holders."

It further appears from the testimony that after the liberation of France, the claimant, acting with the vice-president of the organization, began " the usual work of the *Fondation* in co-operation with the General Direction of Fine Arts, which still had the funds in its possession." The members of the juries were brought together, new members were selected to take the place of those who could no longer serve and candidates were proposed and recommended for the awards made in 1946.

On this evidence, it must be said that the claimant has met fully the executors' argument as to requirement of substantial service to a living organization. It has been established beyond doubt that the *Fondation* is not a " mere shell " but that it has a real and active existence. Likewise it has been shown that the claimant's services as secretary were not merely " illusory " and designed to lend color to his claim upon the contract but were substantial and of value.

Neither Mrs. Blumenthal's will nor the contract made by the deceased required in terms the performance of any services by

the claimant. The will expressly labeled the annuity a gift. In language chosen by himself, the deceased set forth as the consideration for the contract, not the performance of services but the surrender of the claimant's rights under the will. If the question had to be decided, the Surrogate would hesitate to read into the contract '' conditions or limitations which the parties have not assumed '' (*Streat Coal Co.* v. *Frankfort Gen. Ins. Co.,* 237 N. Y. 60, 68; *Jermyn* v. *Searing,* 225 N. Y. 525, 541). In any event, the evidence shows full compliance with the presumed requirement of substantial service to an existing and flourishing organization.

In addition to acting as secretary of the *Fondation,* the claimant held a public position as Curator of the National Museums of France. In a final effort to defeat his claim, the executors have produced documents showing that the claimant was forced into retirement from his position by a decree of the Minister of National Education. That decree, however, did not remove him from his position as secretary of the *Fondation,* a private organization. It removed him only from public office.

On the entire record, the Surrogate holds that the claimant has established his right to recover under the contract. The claim is allowed and the objections to the rejection of the claim are sustained. Submit decree on notice accordingly.