In the Matter of the Estate of GEORGE BLUMENTHAL, Deceased.

Surrogate's Court, New York County, February 24, 1949.

*Lehman, Goldmark & Rohrlich* and *Cleary, Gottlieb, Friendly & Cox* for Carl J. Schmidlapp and another, as executors of George Blumenthal, deceased, petitioners.

*James H. Halpin* and *Eric Nightingale* for Andre Dezarrois, respondent.

COLLINS, S. By prior decision herein (193 Misc. 346), the court sustained a claim against the estate asserted by one Andre Dezarrois of Paris, France. The claim was based upon a written contract dated September 6, 1932, whereby the deceased, George Blumenthal, agreed to pay Dezarrois the sum of $1,000, semi-annually, on the '' twenty-first days of March and September; '' the first payment to be made on September 21, 1932, and to continue thereafter so long as the claimant was connected in an official capacity with the *Fondation Americaine Pour La Pensee et l'Art Francais*. Mr. Blumenthal made the agreed payments to and including the payment due September 21, 1939. No payments were made thereafter.

The claimant now asserts that interest '' must be computed on each instalment from the due date and added to the claim as allowed by the Surrogate.'' His principal contention is that under section 480 of the Civil Practice Act the allowance of interest is mandatory. This section so far as applicable reads as follows: '' In every action wherein any sum of money shall be awarded by verdict, report or decision upon a cause of action for the enforcement of or based upon breach of performance of a contract, express or implied, interest shall be recovered upon the principal sum whether theretofore liquidated or

unliquidated and shall be added to and be a part of the total sum awarded.''

The claimant contends that the section contains no exceptions whatever as to the allowance of interest and leaves no discretion to the court as to the award of interest. He further argues: '' By the terms of Section 480 interest is allowed on every award for breach of contract from the date of the breach. In the case at bar Blumenthal during his lifetime and the Executors after his death, in breach of Blumenthal's contract with Dezarrois failed to make the payments due to Dezarrois. Interest must, therefore, be computed and added to each instalment from the date it was due to date of entry of the decree allowing Dezarrois' claim.''

The executors contend that even accepting the claimant's theory as to section 480, the claim for interest is excessive. They say that the '' earliest possible date which can be characterized as the date of any breach is August 2, 1946, the date upon which the executors rejected the claim of this claimant.'' They assert that the facts show that the failure of Mr. Blumenthal to make any further payments after September, 1939, was not due to any breach of contract but was the result of the express request of the claimant.

The evidence sustains the executors. The claimant's testimony was taken in Paris upon written interrogatories, dated August 7, 1947. In answer to cross interrogatory No. 108, the claimant testified that a letter, a copy of which was received in evidence as Exhibit G, had been signed by him. The letter is dated '' Paris, March 15, 1946 '' and is addressed to Mr. John Dube of Paris, '' a representative of the executors in France.'' In it the claimant refers to the agreement between himself and Mr. Blumenthal. He stated that he was in New York in July, 1939, that he met Mr. Blumenthal and received from him the payment due in September, 1939. He then said:

'' When war was declared, it was agreed upon that he would hold the future payments and would give me the amount thus accumulated when the war is over.

'' Therefore the George Blumenthal estate owes me *since 1940, six yearly payments of $2,000 each, i.e. $12,000 plus $1,000 due March 1st, 1946,* making a total of *thirteen thousand dollars,* without prejudice of the *$1,000* which will be payable on *September 1st, 1946,* and the $2,000 to be paid each following year by the same estate.''

Although the letter was intended by the claimant to constitute the assertion of a claim against the estate and was so

considered by the executors, it says nothing about interest. The reason why Dezarrois made no claim for interest becomes instantly apparent from his answer to cross interrogatory No. 109.

Referring to the claim against the estate set forth in his letter to Mr. Dube, he was asked: " Did you declare this claim to the French Government in accordance with Ordinance 45–86 of January 16, 1945 or any other applicable law, statute or governmental regulation or decree."

The reply was: " I refuse to answer this question, which tends to discredit or to incriminate me."

It thus appears quite obvious that any failure of Mr. Blumenthal to transmit payments to Dezarrois after September, 1939, was not the result of a breach of contract but was due undoubtedly to the claimant's own request. It is also obvious that the request was based upon the claimant's desire to escape French regulations which might have resulted in the confiscation of each payment as it arrived in France. Unquestionably it was for this reason that the claimant requested Mr. Blumenthal to " hold the future payments " and to make payment of " the amount thus accumulated when the war is over."

The claimant's own proof points conclusively to this view of the facts.

(1) On his direct examination, the claimant was asked about certain letters addressed to him by Mr. Blumenthal and received in evidence as Exhibits 4 to 13. Two of these letters, Exhibits 12 and 13, indicate that Mr. Blumenthal and the claimant were in correspondence as late as April, 1940. Exhibit 13 is a copy of a letter, dated April 29, 1940, from Mr. Blumenthal to the claimant.

There is nothing in any of the correspondence to indicate any breach of contract by Mr. Blumenthal. The indications are quite to the contrary. An installment had become due on March 21, 1940, approximately three weeks before the claimant's letter of April 10, 1940, to Mr. Blumenthal. It seems strange, indeed, that the claimant would not refer to the default in that letter if in fact a default had occurred. It must be remembered that the claimant had been receiving regular payments from September, 1932. Surely, if, as he claims, the payments had been suddenly broken off, he would have asked Mr. Blumenthal for an explanation. It is reasonable also to assume that the correspondence would at least refer to such a sudden change of position. One would also expect the correspondence to reflect

the bitterness or at least the disappointment, of the parties, that the breach had come into being. Instead of this, we find Mr. Blumenthal, in his letter of April 29, 1940, sending his best regards to the claimant. The letter closes " Very affectionately, G.B."

(2) The first letter, Exhibit 4, is dated March 12, 1931. From this first letter to the last of April 29, 1940, Mr. Blumenthal maintained an attitude of affectionate regard for the claimant. Yet the claimant would have us believe that more than a month prior to the last letter, Mr. Blumenthal had decided not only to violate his obligations but to " obliterate " from his records " every trace of his obligation to Dezarrois."

(3) The claimant characterizes the executor's argument as " sheer nonsense." If anything sounds like " sheer nonsense," it is the claimant's argument that although he was deprived of money justly due him he corresponded with Mr. Blumenthal without once asking the cause of the injustice done him. Mr. Blumenthal died on June 26, 1941. There was thus a period of more than one year and three months from the time of the first breach of March 21, 1940. Yet the court is asked to believe that not once did the parties mention what should have been a serious disruption in their friendship. The answer must be that no such disruption occurred and that the payments stopped only because the claimant asked Mr. Blumenthal to hold all future payments and to pay them in a lump sum when the war was over.

(4) There is other evidence in the record to support the executors. The claimant knew that Mr. Blumenthal died in 1941. Yet he made no claim of any kind until his letter of March 15, 1946, to Mr. Dube. As noted above, that letter made no claim to interest. It was not until he filed a formal proof of claim on July 30, 1946, that any demand for interest was made.

In my opinion the evidence is overwhelming that Mr. Blumenthal's failure to transmit the payments was not due to any breach of the agreement on his part but was due solely to the request of the claimant. It is further my opinion that as a result of the new agreement, Mr. Blumenthal became a mere depositary of the funds as they accrued and became due. In such a situation, he would become liable for interest on the payments only after a demand for payment (*Ledyard* v. *Bull*, 119 N. Y. 62).

In the case cited, a father and son were associated in business as copartners. The father decided to retire. A settlement was had and it was agreed that there was due and owing to the father the sum of $75,000 as his share of the partnership assets.

The father wrote a letter to the son confirming the settlement and stating that the $75,000 was to remain a credit on the partnership books until the son had "reasonable time to realize from the assets out of which it arises."

The father died before the $75,000 was repaid. The son died about five years later, the $75,000 remaining unpaid. Nearly ten years after the father's death, one of his daughters was appointed administratrix of his estate. In that capacity she brought suit against the executors of the son's estate to recover the $75,000.

A question arose whether the son was legally bound to pay interest on the $75,000. In holding that no interest was payable, the Court of Appeals said (p. 74): "Interest is payable for the loan or retention of money by express contract, or as damages for nonpayment of money due. Here there was no contract to pay interest; and hence, no interest could be claimed upon the $75,000, unless that amount became due and payable and the son was in some way in default for not paying. The general rule is, that in the absence of an agreement to pay interest, it is implied by law as damages for not discharging a debt when it ought to be paid. The important practical inquiry, therefore, in each case in which interest is in question is, what is the date at which this legal duty to pay as an absolute present duty arose? * * * Money payable on demand does not draw interest until after demand, and *so, money deposited with a depositary, does not draw interest until after demand.*" (Italics supplied.)

So here, Mr. Blumenthal had become a depositary of the payments at the express request of the claimant. The payments so deposited did not draw interest until after demand.

But even if Mr. Blumenthal did not become a depositary, the result is no different. As the Court of Appeals said in the *Ledyard* case (*supra*, p. 76): "The father evidently treated his son as the depositary of the money due him, and he drew upon his deposit from time to time as he needed money for the support of himself and family, and in this view the sum could not draw interest until demanded. There was, we think, absolutely no basis for the allowance of interest. *But if we are wrong in this,* yet, we think, upon the facts, *the referee could justly draw the inference that it was the understanding of the parties that the sum should not draw interest.*" (Italics supplied.)

In this connection the court noted that the father and son had conducted other transactions over a period of years after the settlement had been made and yet the father had never referred to interest. Said the court (p. 75): "If there had been any

understanding that he was to have interest, would there not have been some mention of a matter of such importance, or would not the interest have been credited against the moneys had? "

Here, the case is much stronger for the executors. Here we have a claimant who says that he was deprived not merely of interest but of the whole fund itself. Yet nowhere in the correspondence between himself and his benefactor does any mention of this thievery occur.

The claimant, apparently recognizing that the depositary agreement imperils his claim for interest, attempts to escape its force by adding terms that nowhere appear in the letter to Dube. Thus, in his brief, the claimant says that even if such an agreement existed, Mr. Blumenthal and the executors " broke the agreement by failing to deposit the instalments as they accrued *in the special account.*" There is nothing in the claimant's letter to Dube and nothing in the record to support this new claim that Mr. Blumenthal undertook to deposit the funds " in a special account."

It appears clear from the evidence that Mr. Blumenthal was holding the fund upon the request and consent of the claimant. " In order to start interest running a demand * * * for its payment was necessary." (*Matter of Cole,* 85 Misc. 630, 635; *Lawrence* v. *Church,* 128 N. Y. 324, 332.)

The claimant relies heavily upon section 480 of the Civil Practice Act. But, as the claimant himself interprets that section, it applies only to a " breach of contract." In *Flamm* v. *Noble* (296 N. Y. 262), cited by the claimant, the Court of Appeals said (p. 267) : " The above amendment of section 480 provides for the addition of interest to a principal sum awarded by verdict, report or decision *for breach of contract* ".

Throughout the briefs, main and reply, the claimant recognizes that his right to interest depends upon his establishment of a breach of contract. And, for the enrichment of his purse, he has striven desperately to show that the breach occurred as long ago as March 21, 1940.

In my opinion, the earliest date from which interest should be allowed is March 15, 1946, the date of the claimant's letter to Mr. John Dube, the executors' representative in Paris. This marks the first demand for payment made by the claimant from the time the payments stopped in March, 1940.

The rate of interest should be 6% (*Matter of Fuller,* 267 App. Div. 763, affd. 294 N. Y. 866).

Submit decree on notice in accordance with this and the prior decision **herein.**